THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRED McGUIRE, Appellant.

*Court of Appeals, October 18, 1892.*

*Homicide. Accomplice.*—The facts in the case were held to prove clearly that the murder charged in the indictment was committed either by the prisoner or one Sarah Brown; and it was further held that, if the latter was regarded as an accomplice, her evidence was strongly corroborated in material respects by that of the prisoner himself, and strengthened by the falsity of his statements, when first accused, and by his confession.

Appeal from judgment of the Orange county oyer and terminer, convicting defendant of the crime of murder.

*Wilton Bennet,* for appellant.

*M. H. Hirschberg,* for respondents.

FINCH, J.—It is so entirely clear that the murder charged in the indictment was committed either by the prisoner or

Sarah Brown, that the learned counsel for the former frankly admitted the fact upon the argument, and so left in the case only the inquiry which of the two was guilty of the crime. Each charged it upon the other, and both as witnesses upon the trial gave their version of the facts, and it is not difficult upon a comparison of their respective accounts of the transaction to determine where the truth really is.

They started from their home together and went to the neighborhood of Gregory's house. Both knew that money was kept there, and largely over-estimated the amount. Both had talked over the project of robbery, and apparently were ready to commit that crime if it could be done with safety. The man says that they left home for the innocent purpose of gathering nuts, and that in pursuit of that occupation they came to the edge of the woods near Gregory's; that the woman then said she was going to Gregory's; that the prisoner asked what for; and she merely replied, " Wait till I return; " and that when she came back she said she " had murdered the dirty old wretch." She had never before been in the house, had no acquaintance with and so no personal hostility to Mrs. Gregory, never even asked McGuire to go with her or aid her in the enterprise, and did not tell him her purpose, although she knew he had talked about the robbery and certainly had displayed no aversion to the act. The story, as he tells it, is not very easy of belief. On the other hand, she testifies that they left home for the understood purpose of effecting the robbery, which had often been talked about; that she tried to persuade the defendant to abandon his purpose, but he persisted; that he left her to wait for him at the barbed wire fence; that on his return he said he had killed Mrs. Gregory, but wished he had not; and that he hid the pistol, the pocket-book, the money, and the mask, which he had made, in the woods where they were afterwards found. Knowing, as we do, that one account or the other is substantially true, although both witnesses were more or less unreliable, there is very little doubt which should

have our belief. And even that doubt is dispelled when other features of the evidence are considered.

Mrs. Gregory was both shot through the head and cut and mangled and bruised almost beyond recognition. Her blood was everywhere; on the floor and on the door and spattered in all directions. The broken vessel of earthenware showed with what weapon the cuts and bruises were made. The murderer left the ·scene through the front door. The blood on his hands stained its knob, left finger marks on the sides, and the outline of a heel on the porch. And yet the prisoner, telling his story to save his life, confesses that when Mrs. Brown returned to him he saw no blood upon her anywhere, on face or hands or dress, and no witness in the case was able to find upon her clothing any such marks of guilt, although she wore for the first time a light calico dress which she continued to wear thereafter. If she was the guilty person, what we know of the death scene makes it certain that the blood of her victim would have been plainly visible upon her in the daylight of her return. In addition, he declares that he saw her have no weapon, although, beyond question, the shots were fired from his own revolver. On the contrary, she testifies that he returned with blood stains upon him; that they were on his pants and on his shoes; that he wore two·coats when he started from home, a black coat over a red one; that he left the black coat with her at the fence, and on his return put on the black one, and buried the red one, which he later dug up and burned. She adds that he rubbed out most of the stains on his pantaloons with a piece of lining torn from the coat, but one refractory spot he pounded out with a stone, and she sewed a patch over the rent. The garment with the patch on .it was produced, and all the prisoner could say about it was that he could not tell how the patch or the hole it covered came to be there. Comparing the statements of the two witnesses, we are obliged to say that even if the woman be regarded as an accomplice her evidence is strongly

corroborated in material respects by that of the prisoner himself, and strengthened by the falsity of his statements when first accused. He denied totally his presence at Gregory's or near there on that afternoon, asserting that he went to the asylum in pursuit of work, and denied also possession of the small revolver. The falsity of both statements he admitted as a witness, assigning as an excuse a desire to screen Mrs. Brown, when the most probable object was to screen himself.

A distinct confession of his guilt made by him to Brazington was sworn to by the latter. He cannot be regarded as an accomplice in the commission of the crime. When it was done he was at work with Gregory in the celery field, and never was gone for a moment. There is no evidence that he knew beforehand of the expedition to Gregory's on that day, or in any manner aided or abetted it. There is proof that he talked approvingly of a robbery, and even started once with McGuire to effect it, but he is in no manner connected with the actual offense committed except by his silence after he heard of it. He says that McGuire confessed to him that he committed the crime, and gave him the twenty dollar gold piece and some other money stolen from Gregory not to tell. The prisoner's counsel calls the story improbable, and criticises it as telling of a crime and then buying the listener's silence, when it was easy not to tell at all. But that is not a just criticism. What had previously passed between the two with reference to a robbery was quite enough when it occurred to enable Brazington to be sure that McGuire was the perpetrator. The latter knew that the former would be confident of it, and a denial to him useless. He took what seemed to him the safer course of telling him the truth, and bribing him to silence. So that neither the want of corroboration of Mrs. Brown's evidence nor the criticism upon Brazington's are well founded.

The defendant's counsel urges that the proof given of practice at shooting at a mark by McGuire, Mrs. Brown and

Brazington, or some of them, was improperly admitted. It was competent evidence, although of very slight importance, and can scarcely be said to have influenced the verdict.

The trial was conducted with extreme solicitude for the rights of the prisoner; the charge to the jury was so fair and just that his counsel not only took no exception to it, but expressed his entire satisfaction; and the verdict is well supported by the evidence.

The judgment must be affirmed.

All concur.