PEOPLE v. ZUCKER.

(Supreme Court. Appellate Division. First Department. August 4, 1897.)

1. CRIMINAL LAW—ACCOMPLICES—INTENTION.

    The fact that one knew of defendant's purpose to commit a crime, and performed an act tending to assist in the perpetration of the offense, did not, as a matter of law, render him an accomplice, within the rule requir-ing testimony of accomplices to be corroborated, where it was in dispute whether he did the act with intent that it should aid in the commission of the crime.

2. SAME—EVIDENCE OF OTHER CRIMES—ADMISSIBILITY.

    An insured building in New York had been condemned by the board of health, and its owner intended to destroy it by fire, so as to obtain the insurance money. He caused the bulk of the personalty therein, which he owned, to be removed to New Jersey, intending to make a fictitious trans-fer of it to a third person, in whose name it was to be insured, and then to cause the destruction by fire of it also. The remainder of the personalty he left uninsured in the New York house, so that the company carrying insurance on the house would not suspect incendiarism. The scheme was fully carried out, except that he had intended the two fires to take place at once, and the New Jersey fire was set several days before the other. *Held*, that evidence of the New Jersey fire was admissible on trial for arson of the New York house.

    Williams and Ingraham, JJ., dissenting.

Appeal from trial term, New York county.

Isaac Zucker was convicted of arson in the first degree, and he appeals. Affirmed.

Argued before RUMSEY, WILLIAMS, PATTERSON, INGRA-HAM, and PARKER, JJ.

William F. Howe, for appellant.
John D. Lindsay, for the People.

PATTERSON, J. The appellant was convicted of the crime for which he was indicted and tried, upon the testimony of the witness Schoenholz, who swore that he set fire to the premises in Division street, and that he was employed by Zucker to do so. One question arising in the case is as to corroboration of the statements of this witness Schoenholz; such corroboration being necessary in order that the proof of the defendant's guilt should not rest altogether on the unsupported testimony of an accomplice in the transaction. The record contains corroborating evidence, and it is to be found in the testimony of the witness Meyers, who swore to a conversation

between himself and Zucker, the prisoner, which conversation took place at about the exact time the fire occurred, and in which Zucker declared to Meyers that he had been waiting for an hour, that he did not hear any fire engines coming, and was worried about it, and asked Meyers to go over to Division street, and tell Schoenholz to give him the key. "I want to make that to-night. I am afraid it won't go off, and they are liable to find that stuff all in there." Meyers says he declined going, because an explosion was liable to take place, and that, he being seen about there, people in the neighborhood would be apt to think that he (Meyers) had something to do with it. Meyers then walked, according to his story, with the prisoner up Grand street, as far as Attorney street, when the fire engines were seen coming; whereupon the prisoner said: "Meyers, it's all right. It's off; I am sure they won't find the stuff there now." Subsequently, and while the fire was in progress, the prisoner remarked that it was not much of a fire; he did not think Schoenholz did it right; that there were two streams on it, and it looked to be more smoke than it was fire. It is claimed that this evidence is subject to the same criticism as that made to Schoenholz's, namely, that Meyers also was an accomplice. I do not think that Meyers can be regarded as standing in that relation to Zucker. He was not particeps criminis. He was in no way connected with the crime itself. He had nothing to do with its commission; was not concerned in it; but, according to the testimony, positively declined to take any part in it. His single act in helping to remove some plaster did not necessarily make him an accomplice. All that is to be said concerning him is that he knew of the purpose of Zucker, and did not reveal it. Upon this state of facts, the court was asked to charge substantially that Meyers was an accomplice, and for that reason his evidence could not be used to corroborate the evidence of another accomplice, and that it could not be regarded as sufficient to convict unless it was corroborated. This the court refused, and to this refusal exception is taken, which is now relied upon as error.

To constitute an accomplice, one must be so connected with a crime that at common law he might himself have been convicted either as the principal or as an accessory before the fact. To warrant such a conviction, the one accused must have taken part in the perpetration of or preparation for the crime, with intent to assist in the crime. Every act which may have a tendency to assist in the perpetration of the crime is not of absolute necessity criminal. Before it will have that effect, it must have been done with the intention on the part of the actor that it shall aid in the commission of the crime. Unless it appears without dispute that there was such intention, the person doing the act cannot be said to be a principal; and, if there is a question whether the act was done with such intent, that question must be submitted to the jury, and answered by them in the affirmative, before the actor can be held to be a principal, and consequently before he can be held to be an accomplice. The court was asked to charge that, as a matter of law, Meyers was an accomplice. This he properly refused to do. Giving

to the facts sworn to the largest effect, all that can be said is that the jury, upon those facts, might have found that he did the acts with intent to assist in preparations for the perpetration of that crime; and, if that intent had been found, he could be charged as an accomplice. But it was for the jury to find the intent. The court was not asked to submit to the jury the question whether he was an accomplice, or to say to the jury that, if they found that he did the acts with intent to assist in the perpetration of the crime, then he was an accomplice, and required corroboration. Had that request been made, a different question would have been presented. But the court did not err in refusing to decide the effect of those facts as a matter of law, and for that reason it was not error to refuse to charge as requested.

But the important question in the case relates to the admission of testimony as to the perpetration by the appellant of another crime of arson, consisting of the burning by him or at his instigation of a building in Newark, in New Jersey, shortly before the fire occurred in Division street, in the city of New York. The New York fire occurred on the 4th of January, 1892. A few days before that, certain premises in Mulberry street, in the city of Newark, were burned, in which premises had been placed personal property, removed from the Division street house, to Newark, by the procurement of Zucker. The testimony with respect to the Newark fire came into the case on the examination of Schoenholz, and at first without objection. It is quite apparent that evidence touching this Newark fire must have been very influential, and, if it were improperly allowed to go to the jury, there can be no doubt that the conviction should be reversed. The ground of the appellant's attack upon it is that it relates altogether to an independent crime, for which the prisoner was not indicted, and which was in no way connected with the alleged offense for which he was being tried. The rule is wide in its application that evidence of independent and disconnected crimes cannot be given on the trial of an indictment for a specific offense. The justice and reasonableness of the rule is too apparent to need comment. But where one crime is committed to prepare the way for another, and the commission of the second crime is made to depend upon the perpetration of the first, the two become connected and related transactions, and proof of the commission of the first offense becomes relevant to show the motive for the perpetration of the second. It would scarcely be doubted that on the trial of an indictment for murder it might be shown that the prisoner, in order to furnish himself with a weapon with which to do the killing, stole that weapon, and the larceny thus becomes part of the preparation for the murder. In the case at bar the question is whether the act of arson committed in Newark was part of a scheme to prepare the way for the burning of the house in Division street, in New York, proof of it furnishing evidence either of a motive for the commission of the crime in New York, or showing a set of circumstances designed and brought about to divert suspicion as to the origin of the crime the prisoner contemplated committing in burning the house in New York. If the commission of the so-called "independent crime" is traced in the evidence as directly connected with the act of burning the

New York house, to show a motive and a reason for that burning, the two acts become part of one connected scheme, culminating in the arson for which the prisoner was indicted.

Without stopping to comment upon the contaminated source of the testimony on this topic (for all that was properly and very carefully dealt with by the trial judge), it was shown that Zucker's scheme was concocted as far back as the month of August, 1891. He then occupied the premises 264 Division street, and was the owner both of the house and of certain furniture situated therein. At that time, Zucker, at the house of one Blum, employed Schoenholz to remove the furniture from 264 Division street to 140 Mulberry street, in Newark. He told Schoenholz that he wanted to have the furniture moved, because he was going to burn down the Division street house, as it was condemned by the board of health, and it would cost about $2,000 to fix it up; in substance, he wanted the furniture moved to Newark, where he would have it insured in the name of one Seltzer, for the reason that he (Zucker) could not get it insured in his own name, because he was blacklisted by the insurance companies. The evident purpose of this removal of the furniture was to have it insured, and then destroyed by an incendiary fire in Newark, for Schoenholz asked Zucker, "What will you do to him [Seltzer] if he will beat you out of it?" There can be no misunderstanding of the testimony as to what this inquiry relates, for, after the furniture was moved, Zucker declared to Schoenholz, "I think I will arrange it so that these two places will go off at the same time,—Newark and here." Zucker also declared that he left certain of the personal property in the Division street house, namely, remnants of goods and machinery and sewing machines, "for the purpose, when the house shall burn down, the insurance company will have no suspicion that the place was set on fire, because there will be so much goods laying around, and it will be such an accident fire, and I was not insured"; meaning on that remaining property. Now, it is perfectly obvious from this testimony, and the jury believed it, that Zucker, intending to destroy the house in Division street, and also the personal property belonging to him situated in it, prepared a scheme by which the personal property should be destroyed by an incendiary fire in Newark, the house destroyed by an incendiary fire in New York, both fires to occur at about the same time, and in the preparation for both of which intended simultaneous fires Zucker employed the witness Schoenholz. Zucker's object was to get the insurance on the personal property, then in Division street house, through a transfer of it to Seltzer, its removal to Newark, and its destruction by fire under circumstances with which he would have no apparent connection. Such being the scheme, the one plan that Zucker concocted for the purpose of burning his house and his personal property then in that house, the prosecution merely undertook to show that the scheme was carried out, and that the crime of arson was committed, in precisely the way in which it was prepared; the only difference being that, instead of the two fires occurring on the same day, one preceded the other by a few days. That Zucker caused the whole scheme to be executed in both its parts was testified to. Schoenholz said: "So, you had a fire there already in Newark, and you have kept your word.

You were going to let me do it." To which Zucker replied: "You could not have done it anyhow, and the best luck that I ever had happened to me at this fire." Here was a positive acknowledgment by Zucker of the consummation of that branch of the scheme which involved the burning of the personal property which had been removed from the Division street house, in order that it might be destroyed in Newark, to obtain the insurance money; and the proof of the destruction of the building in New York for the purpose of procuring insurance money was also proven. These two fires stand so closely and inseparably related in the formation and carrying out of one plan for destroying both classes of property, for the purpose of getting insurance on both, that I think no fair doubt can be entertained as to the competency and admissibility of the evidence relating to the one transaction in its entirety, of which it may be said only that it included two branches.

The conviction was right, and should be affirmed.

RUMSEY and PARKER, JJ., concur. WILLIAMS and INGRAHAM, JJ., dissent.

INGRAHAM, J. (dissenting). The defendant was indicted with one John Blum for setting fire to and burning a dwelling house, No. 264 Division street, and upon the trial on this indictment the defendant was convicted of arson in the first degree. There is one exception in the record which I think is fatal. The principal witness against the defendant was one Schoenholz, an accomplice, who testified that he lighted the fire at 264 Division street at the instigation of the defendant. The first talk he had with the defendant on the subject was in August, 1891. At that time the witness moved the defendant's furniture from Division street, and the defendant then told the witness that, right after the Jewish holidays, he was to have another job, to move his store to Newark. Zucker said: "I got to burn down this shanty; otherwise the board of health will condemn it, and, if I should go to fix it up, it will cost about $2,000, and I will give the company a chance to fix it up for me." Blum, who was the owner of an adjoining house, entered into the arrangement by which both houses were to be burned or damaged by fire or water. The defendant also said that he had got a store in Newark in the name of one Seltzer, saying that he could have it insured in Seltzer's name. After the Jewish holidays, in October, the witness saw the defendant again, and the defendant said: "I am going to move the store now to Newark. I have got a store all ready. First thing you will move me is the fixtures, boards, and other things that belongs to the fixtures." The next day the witness again saw the defendant, and Seltzer and the witness moved some boards and a case of goods from the cellar, and some clothing and other articles, and took them to Newark. Seltzer went with the witness on the wagon, and, when they got to Newark, Zucker, the defendant, was there. The next day the witness carted a big truck of clothing from the same place to Newark, from 264 Division street, and another load on the following day; three loads altogether These goods were mostly clothes bundled up, but inside of the

bundles some of them were burned over the edges. Subsequently the witness had another interview with the defendant at the Division street house, at which he said: "Now, I am going to prepare this place to burn it down, and I will see what kind of an engineer you will make." The defendant then detailed the plan by which the fire was to be started, and ended up by saying: "Right after the fire in Newark, I am going to prepare this." The witness testified to a subsequent conversation with the defendant in the latter part of December, at which the witness said: "So, you had a fire there already in Newark. You kept your word. You were going to let me have it,—to let me do it." And the defendant said: "You could not have done it anyhow, and the best luck that I ever had happened to me at this fire." The witness then described how the defendant stated that he started the fire in Newark, and who also said: "Now, we are going to prepare this,—to burn down this shanty." On January 4th the witness was again at the house in Division street with the defendant, when, as he testified, the preparation for the fire was made. The partitions between Zucker's house and Blum's house were broken down. Twenty gallons of benzine were procured, and the defendant took the benzine, and poured it into tubs or barrels; directed the witness to sprinkle some of the benzine upon the stairs and curtains; and then the defendant left the house, leaving the witness in charge. Subsequently the defendant returned, and sprinkled the benzine all over the woodwork, and on the wall between his house and Blum's house, and wetted the curtains and the staircase with it; and finally, when the arrangements were completed, the defendant told the witness that he would give him $25 to light the candle. The defendant then went away, leaving the witness in the house. Some time after the witness lighted the candle, he went to the corner of Montgomery and Division streets, in a liquor store, waited there until the fire broke out, and until it was extinguished.

We have here the testimony of the participation by the defendant in the burning of the Division street house, the crime for which he was indicted and convicted. If this testimony is true, the crime with which the defendant is charged is proved. This witness, however, being an accomplice, the jury were not justified in convicting unless his testimony was corroborated. For the purpose of such corroboration, the district attorney called one John Heath, who resided in Newark, and others, who were, against the objection and exception of the defendant, allowed to testify to facts tending to show that the defendant had set fire to the Newark house. The district attorney was therefore allowed to prove the commission by the defendant of the crime of arson in Newark, upon an indictment charging a commission by the defendant of the crime of arson in New York. There was no immediate connection between the two crimes. According to the testimony of the conversations of the defendant, the Newark fire was started by the defendant himself, while the New York fire was started by an accomplice, in the absence of the defendant. No immediate connection between the burning of the two buildings is shown, and nothing is shown to

make the two fires a part of the one conspiracy, or one crime. They seem to have been as much independent crimes as the murder at different times of two people would be, one of whom was killed in Newark, and the other in New York. No intention is disclosed of making one fire for the purpose of drawing suspicion from the defendant as to the other crime. There is no direct connection between them, except the fact that the defendant had stated to the witness that he intended to burn both buildings. When the district attorney offered evidence to show that the defendant was guilty of the crime in Newark, the learned court held that the evidence was only competent as tending to corroborate the accomplice, and it was admitted for that purpose. It will be noted, however, that the accomplice had not testified that the defendant had committed the crime in Newark, but merely testified to conversations in which the defendant expressed an intention to commit the crime, and subsequent statement that he had committed the crime. In overruling the objection of the defendant, the court said:

"The testimony upon the part of this witness is offered for the purpose of showing Zucker's presence there [at the Newark store]; that there was a clothing store opened about two months previous to this Christmas; and that a fire did occur, Schoenholz having testified that Zucker told him that that fire had occurred in the manner which they had intended and provided for. This is therefore, to that extent, corroborative. What weight is to be given to it, of course, is for the jury, but the competency of the evidence, I think, cannot be doubted."

I think that this evidence as to the Newark fire was entirely incompetent upon the trial of an indictment for setting fire to a house in New York, and it is quite clear that it was error which was essentially injurious to the defendant. The jury were not authorized to convict upon the testimony of this accomplice, unless it was corroborated; but the corroborative evidence must be such as to show the commission of the crime for which the defendant is indicted, or to connect the defendant with it. It is not permissible for the accomplice to testify to the commission of a crime entirely independent from that for which the defendant was indicted, and then prove the commission of such independent crime to corroborate the accomplice. The testimony of the conversation between Zucker and this accomplice as to the Newark fire was not objected to, and probably was competent as a part of the conversation between the witness and defendant, at which the commission of the crime for which the defendant was on trial was arranged for; but proof that the other crime referred to in the conversation was actually committed is incompetent as evidence to show that the crime charged in the indictment was committed. How does it tend to show that the defendant was guilty of setting this house in Division street on fire by proving that he was guilty of setting a Newark house on fire, except so far as it makes it probable that a man who had before committed a similar crime would commit the crime for which he was indicted? Such evidence has always been held incompetent. We think the rule indicated was violated in this case when the people were allowed to prove, as evidence of guilt of the defendant upon this indictment, or as evidence tending to corroborate the accomplice, that

he had been instrumental in setting on fire a house in Newark, N. J. It is true that the mere fact that this evidence proved another crime against the defendant did not make it inadmissible, if it was relevant to prove the crime for which the defendant was indicted; but the difficulty is that the crime charged was not a scheme or conspiracy to set fire to two houses, one in Newark, and the other in New York, but was that the defendant had set on fire and burnt a house in New York.

The rule as to the admission of testimony which tends to prove crimes other than that for which a defendant is indicted has been much discussed by the court of appeals in some late cases. Thus, in People v. Shea, 147 N. Y. 99, 41 N. E. 511, it is said:

"The common law of England, however, had adopted another, and, so far as the party accused is concerned, a much more merciful, doctrine. By that law, the criminal is to be presumed innocent until his guilt is made to appear, beyond a reasonable doubt, to a jury of twelve men. In order to prove his guilt, it is not permitted to show his former character, or to prove his guilt of other crimes, merely for the purpose of raising a presumption that he who would commit them would be more apt to commit the crime in question."

The court then proceeded to discuss the limitations of this rule, and said:

"Evidence, however, which is relevant to the issue, by tending, for example, directly to explain or characterize the act which is in question on a criminal trial, has never been held incompetent or inadmissible because it also tended to, or did, prove the accused guilty of another crime."

And it was held in that case the testimony which was objected to was competent upon the question of the intention and deliberation of the defendant's firing the shot that killed.

In the case of People v. Sharp, 107 N. Y. 466, 14 N. E. 343, Judge Peckham, after a review of all the cases, affirms the general rule before stated, that:

"When a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime is wholly excluded. But, for the purpose of showing guilt of the offense for which the prisoner is on trial, as also for the purpose where that is important of showing the motive or intent with which an act claimed to be a crime was committed, evidence which is material upon such issues is admitted, although it may also tend to show, or even directly prove, the guilt of the accused of some other felony or misdemeanor."

In this case, premeditation or deliberation was not required to be proved. Knowledge of the character of the act was not required to be proved. The defendant was indicted for setting fire to a dwelling house in the city of New York, and the act of setting fire to that house was what the people had to prove. What possible relation had the setting fire to the building in Newark to the burning of this house in New York? It is true that there is evidence that the defendant had stated that he intended first to burn one house, and then the other; but, when he stated that intention, he stated an intention to commit two crimes, only connected with each other because they were of the same general character. He could have been indicted and convicted of arson in Newark whether he had committed the crime of arson in New York or not, and so his guilt of the crime in New York did not

depend in any way upon his carrying out his intention as to the Newark crime.

The illustrations in the opinion of Judge Peckham in the case of People v. Shea, supra, show the extent to which testimony of other crimes is admissible; thus where the evidence is admitted to show guilty knowledge of the character of the act committed by the prisoner, as in the case of an indictment for passing counterfeit money, and also in the case of an indictment for shooting an individual, of which the case then before the court is an example. Cases of embezzlement and obtaining money under false pretenses are also noted, where the claim that a false entry by which funds were embezzled was a mistake is met by proof that other false entries of the same kind had been made about the same time by the same person; and such evidence has been admitted for the purpose of showing the motive for the commission of the crime charged. Now, it is clear that none of these exceptions can apply to the case at bar. These crimes, as before stated, were absolutely distinct. They had no relation one to the other, except so far as the defendant had admitted to his accomplice that he intended to commit them both. The Newark crime was not so connected with the New York crime by evidence that made it appear that the same person committed both crimes; and thus evidence that the defendant committed the Newark crime would not be competent to show that he committed the New York crime; nor was the question of motive involved. I can conceive of no principle upon which these crimes were so connected as to make evidence that he committed one crime competent to prove that he was guilty of the other, except upon the principle that a man who would set fire to a house in New Jersey would be quite likely to set fire to a house in New York. The competency of such evidence has been consistently repudiated by the common law. As before stated, it was not competent for the purpose of corroborating the accomplice upon any fact tending to show that the crime for which the defendant was indicted was committed, or to connect the defendant with the commission of that crime; for this evidence tended only to corroborate him as to conversations with the defendant about the commission of another crime, and as that did not tend to connect the defendant with the crime for which he was indicted, not to prove that such crime had been committed, such corroboration was ineffectual as the corroboration of an accomplice that the law requires. This evidence was objected to, and admitted over the exception of the defendant. The learned trial judge seems to have recognized its incompetency for the purpose of proving the defendant guilty of the crime, and confined its effect solely to the corroboration of the accomplice. The court, in the charge to the jury, said that the testimony of the Newark fire "was only admitted before you for the purpose of establishing, if it could, some connection of Schoenholz and Zucker with the two fires, and so corroborate the story of Schoenholz that there was to be a fire, according to this conversation with Zucker, at Newark"; and the jury were then instructed "not to consider whether he is guilty or not of the fire in Newark, but only whether the circumstances testified to by other witnesses fortify and corroborate Schoenholz and Meyers in the main story which they have testified to

before you." Now, this limitation of the effect of the evidence could not cure the error in its admission if it was not competent to prove the fact of such corroboration; and I think that it was clearly incompetent for that purpose.

I am constrained, therefore, to dissent from the affirmance of this judgment.