# COURT OF APPEALS,

## Jan. 4, 1916.

## THE PEOPLE v. MAX SWERSKY.

(216 N. Y. 471.)

*(1.)* CONSPIRACY FOR POISONING HORSES OF COMPETITORS IN BUSINESS—EVIDENCE—WHEN QUESTION WHETHER A WITNESS IS AN ACCOMPLICE IS NOT A QUESTION OF LAW, BUT ONE OF FACT FOR A JURY.

Defendants were indicted and convicted for the crime of poisoning a horse. They were members of an association of ice cream manufacturers which, it is charged, employed men to poison the horses of independent dealers who refused to join the association. The trial court instructed the jury that a certain witness called by the prosecution was not an accomplice, thereby permitting the jury to find a verdict upon his uncorroborated testimony. The evidence permits the inference that there was a conspiracy to poison the horses of the competitors of the association; that its managers were authorized to use its funds for that purpose; that the witness promoted the conspiracy by joining the association and by paying the poisoners whom it employed; that the crime charged was committed under the direction of the managers of the association, was in aid of the common purpose and that the witness knowing this paid his quota of the cost. *Held*, that the instruction of the trial court was erroneous and that it should have been left to the jury to determine whether the witness was an accomplice.

*(2.)* SAME.

Another witness called by the prosecution had poisoned other horses under the orders of one of the defendants and had been paid by the association, but he did not poison the horse in question and had no part in the poisoning. *Held*, that he was not an accomplice within the meaning of the statute (Code Crim. Pro. § 399).

*(3.)* SAME.

An error in instructing the jury that a witness was not an accomplice will be disregarded when the court is satisfied that even though the witness had been characterized as an accomplice, the jury would have found the defendant guilty because of the abundance of other corroborating evidence. (Code Crim. Pro. § 542.)

People v. Swersky, 168 App. Div. 941, affirmed.

People v. Kalhofer, 168 App. Div. 950, reversed.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 28, 1915, which affirmed a judgment rendered at a Trial Term for the county of New York upon a verdict convicting the defendants of the crime of poisoning a horse in violation of section 190 of the Penal Law.

The facts, so far as material, are stated in the opinion.

*George Edwin Joseph* for *Max Swersky*, appellant.

The court erred in refusing to charge as a matter of law that Joseph Erlichman was an accomplice, or to submit to the jury as a question of fact whether Joseph Erlichman and John Levinson were accomplices. (People v. Zucker, 20 App. Div. 365; 154 N. Y. 770; People v. Becker, 210 N. Y. 274; People v. Russo, 126 App. Div. 717.) There was no sufficient evidence of corroboration of the testimony of the accomplices, and the court should have advised the jury to acquit the appellant at the close of the People's case. (People v. Haischer, 81 App. Div. 599; People v. Plath, 100 N. Y. 590; People v. O'Farrell, 175 N. Y. 323.)

*Samuel S. Koenig* and *John F. McIntyre* for David Kalhofer, appellant.

The trial court erred in its refusal to charge that the witness Erlichman was an accompulice, and also in its refusal to submit to the jury for determination as a matter of fact whether or not the witness Erlichman was an accomplice. (People v. Bright, 203 N. Y. 73; People v. Curlee, 53 Cal. 604; Redd v. State, 63 Ark. 457; Ballew v. State, 34 S. W. Rep. 616; Carrington v. People, 6 Park. Crim. Rep. 336; People v. Hoogkerk, 96 N. Y. 149; People v. Ricker, 7 N. Y. Cr. Rep. 19; People v. Zucker, 20 App. Div. 363; People v. Meyer, 162 N. Y. 357; People v. Kurtz, 42 Hun, 335.)

*Charles A. Perkins, District Attorney* (*Robert S. Johnstone* and *Royal H. Weller* of counsel) for respondent.

The court did not err in refusing to submit to the jury to determine as a question of fact whether the witness Erlichman was an accomplice, or in refusing to hold, as a matter of law, that he was an accomplice. (People v. Zucker, 154 N. Y. 770; 20 App. Div. 363; People v. Bright, 203 N. Y. 73; People v. Sweeney, 213 N. Y. 37; People v. Gilhooley, 108 App. Div. 234; 187 N. Y. 551; People v. Russo, 126 App. Div. 717; People v. Ricker, 7 N. Y. Cr. Rep. 19; 105 N. Y. 668; People v. Yannicola, 133 App. Div. 885; People v. Ogle, 104 N. Y. 511; People v. McGuire, 135 N. Y. 639; 1 Clark & Marshall Law of Crimes, § 176; 1 Am. & Eng. Ency. of Law [2d ed.], 391; People v. Ammon, 92 App. Div. 205.) The court did not err in refusing to rule that the witness Levinson was an accomplice or in refusing to submit the question as one of fact to the jury. (People v. Katz, 154 App. Div. 44; 209 N. Y. 311; People v. Weinseimer, 117 App. Div. 603; 190 N. Y. 537.)

CARDOZO, J.:

The defendants, Swersky and Kalhofer, have been convicted of the crime of poisoning a horse (Penal Law, § 190). Their business in 1910 was that of dealers in ice cream. For that purpose they had formed a corporation, which was under their control. They and many other dealers were members of the New York and Brooklyn Ice Cream Manufacturers' Association. Kalhofer was the president. A written agreement between the members regulated the transaction of business in the city of New York. Each member had a prescribed route; each a stated list of customers; each was prohibited from trenching on the route or diverting the customers of the others. At first the association was limited to the borough of Manhattan; later it was extended to Brooklyn. In Brooklyn the

Royal Ice Cream Company was doing an independent business. It was invited to join the association. There is evidence that it refused, and insisted that it would maintain its independence. Following its refusal nine of its horses were poisoned in a single night. It learned its lesson, made its peace with the association, and became enrolled as a member. The men who poisoned its horses are known. Two of them, Friedman and O'Brïen, were witnesses for the People. The People charge that the poisoners acted under the orders of the defendants. They charge that the association had established a reign of terror, and that dealers who refused to join it were made by the loss of horses to feel the weight of its displeasure. The defendants, admitting that a gang of poisoners was at large, assert that they themselves were victims rather than instigators of its crimes. They say that the money which they gave to some of the poisoners was paid, not to induce new outrages, but to purchase their own immunity. The jury had to say which version was the true one, and they accepted the version of the People.

The defendants now complain that their conviction was brought about through a failure to apply the rule that forbids a conviction on the uncorroborated testimony of accomplices (Code Crim. Pro. § 399). They say that two witnesses for the People, Erlichman and Levinson, were in law accomplices, or, at least, might have been found to be accomplices by a jury. Erlichman gave testimony tending to connect both Kalhofer and Swersky with the crime; Levinson gave testimony tending to connect Swersky. The trial judge told the jury that neither witness was an accomplice. There was an exception by the defendants which requires us to determine the correctness of that ruling.

We think there is evidence from which the jury had the right to find that Erlichman was an accomplice, and we must hold that it was error to instruct them to the contrary. To point

out all the circumstances connecting him with the crime would prolong the discussion unduly. A few salient circumstances will serve our purpose. He had been a member of the association since 1908. The members contributed a tax proportioned to their respective purchases of salt. Erlichman says that the fund thus collected was used to pay the men who poisoned the horses of competitors. He paid his part with the expectation that it would be used for that purpose. In some instances, after horses had been poisoned, there was need of extra money as a reward for the poisoners; and he contributed his share. The money was handed to the collector by his wife. "When I came from the meeting I used to tell her there was a tax for so much money and ' you will have to give it.' Q. A tax for what? A. What we shall give to the Association for poisoning horses." A week before the commission of this crime he was present at a meeting when a committee reported that the Royal Ice Cream Company, though requested to become a member, insisted that it would remain apart, and a resolution was adopted that the committee should make a second attempt to induce the company to join. He understood what this meant. " Did you know how he was to be brought in as a member? A. Everybody understands that. Q. What is your understanding of it? A. They were going to do the same as to the other fellows before. Q. What was your understanding? A. Poison horses. Q. And you were willing to chip in your share? Q. I was not willing, but I must do it. Q. Did you do it? A. I gave it." There is much more to the same effect. After the nine horses were poisoned, Erlichman read of the crime in the newspapers. Swersky asked him whether he liked the job, and he said it was well done. Kalhofer made a like remark, in substance that the job was a good one, and that the chastened rival would quickly become a member. At a later meeting a fund was raised by the association to pay the expenses of procuring this accession to its membership. Erlich-

man paid his share. Later it became necessary to raise $25 more. The poisoners had been employed to kill eight horses and had killed nine, and the price was $25 a head. This was told Erlichman, and again he paid his share.

We think that from this evidence, and more of like nature, a jury would have the right to say that he was a party to this crime. It is true, as the People contend, that " to constitute as accomplice one must be so connected with a crime that at common law he might himself have been convicted either as the principal or as an accessory before the fact " (People v. Zucker, 20 App. Div. 363, 365; 154 N. Y. 770; People v. Bright, 203 N. Y. 73, 79). It is also true that one does not become an accessory before the fact by the mere approval of a crime after the event. Indeed, mere approval before the event may not always suffice to charge one under the common law as accessory, or under the present law (Penal Law, § 2) as principal (1 Whart. Crim. L. [11th ed.] § 266). Long ago it was said in Hale's Pleas of the Crown, 616: " And therefore words that sound in bare permission make not an accessory." Enough must be shown to justify the inference that the offender has counseled or induced or encouraged the crime (Penal Law, § 2; People v. McGuire, 135 N. Y. 639, 642; Levering v. Comm., 132 Ky. 666, 678). But Erlichman is not exonerated by the application of that test. The evidence permits the inference that the association was a conspiracy to poison the horses of competitors; that its managers were authorized to use its funds for that purpose; that Erlichman promoted the conspiracy by joining the association, and by paying the poisoners whom it employed; that the commission of this crime, under the direction of the managers, was in aid of the common purpose; and that Erlichman, conscious that the managers had fulfilled the mandate of the members, paid his quota of the cost. It is not necessary to show that he knew in advance of the event that the horses of this particular rival were to be poisoned. Even that knowl-

edge may, from his own confession, be not unreasonably inferred. It is enough, however, that he made himself a party to a conspiracy which embraced within its scope the destruction of the horses of competitors whenever in the judgment of the managers resort to such a measure became necessary (Spies v. People, 122 Ill. 1; People v. Friedman, 205 N. Y. 161, 165; People v. Giro, 197 N. Y. 152; People v. Strauch, 240 Ill. 60). We think we are not justified in saying as a matter of law that by his membership in the association he became a party to such a plot. There is enough indefiniteness about the scope of the conspiracy, the authority of the managers, the degree of Erlichman's connection, whether it was one of active aid or of passive acquiescence or of bare approval after the event, to make his position as accomplice a question of fact. But a question of fact in our judgment there plainly was. Whether he was or was not an accomplice should have been determined by the jury (People v. Katz, 209 N. Y. 311, 332).

We must now consider the position of the witness Levinson. His testimony connected Swersky with the crime. It did not connect Kalhofer. He says that in the fall of 1910 Swersky asked him to poison the horses of the Royal Ice Cream Company. He had poisoned other horses under Swersky's orders in the past. Indeed, he had received from the association in the summer of 1910 a payment of seven hundred dollars, which was intended, he says, to cover any poisoning " jobs " that might be ordered during the summer. The defendants do not deny that the payment was made, but assert that it was made for another purpose. They say that it was extorted by Levinson through threats, that unless they made it, he would poison the horses of the members. Whatever the purpose of these earlier payments may have been, Levinson maintained that they did not cover the poisoning of the nine horses of the Royal Ice Cream Company in the fall of 1910. Accordingly, when Swersky asked him to commit that crime, and told him there

would be a few hundred dollars in it, he promised to think about the matter and report his decision. Without waiting to hear from him, Swersky employed Friedman, who, with the aid of two other men, Lang and O'Brien, poisoned the horses. A few weeks later Swersky said to Levinson that the job had been done, and at trifling cost. Friedman, one of the poisoners, testifies that Swersky employed him, but does not implicate Levinson. O'Brien testifies that he was brought into the crime by Friedman. Lang, the third poisoner, was not a witness. In this testimony we can find no evidence that would stamp Levinson as an accomplice. He receded from the conspiracy, and the crime was committed without him (1 Whart. Cr. L. [11th ed.] § 267). To permit a jury to say that he did join in it, when the only evidence is that he did not, would be to permit them to build their verdict upon speculation and suspicion. Levinson, by his own confession, had committed many other crimes. But he did not commit this crime, either in person or by procurement.

The ruling that Erlichman was not to be considered an accomplice makes it necessary that Kalhofer be tried again. Erlichman's was the chief testimony connecting him with the crime. It is true that he was also connected by the testimony of Mrs. Erlichman, but the court ruled that she was an accomplice as a matter of law. The charge that Erlichman was not an accomplice may, therefore, have controlled the verdict against Kalhofer. Swerky's appeal, however, presents a very different question. It is true that Erlichman does connect Swersky with the crime. There is, however, an abundance of testimony from witnesses not accomplices which makes out the same connection. We lay aside the testimony of the actual poisoners, who were, of course, parties to the crime, and were so described by the trial judge. Levinson, who is not an accomplice, implicates Swersky. Kolchin, the proprietor of the Royal Ice Cream Company, implicates

him.   Kolchin tells us that he said to Swersky, " That
was a dirty trick done to me; the horses were poisoned," and
that Swersky answered, " If you would join the association be-
fore, maybe that would not have happened."   There is other
corroboration which need not be stated at length.   The cor-
roboration extends indeed to every element of the crime.   It is
not merely circumstantial; it is direct, and, if credited, con-
clusive.

We must, therefore, determine whether the failure to des-
cribe Erlichman as an accomplice affected Swersky's convic-
tion.   The jurors plainly believed that Erlichman told the
truth.   Their verdict, convicting Kalhofer as well as Swersky,
carries that conclusion with it.   They plainly believed Levinson,
for Levinson, though not an accomplice in this crime, testified
that he had received payments to induce him to poison horses,
and the defense was that these payments, though conceded to
have been made, were payments in self-protection.   That was in-
deed the entire fabric of the defense; and the verdict shows
that the jury found the defense to be incredible.   We must,
therefore, ask ourselves whether it can reasonably be supposed
that the jury would have rejected the testimony of Erlichman
and Levinson, corroborated in part by other witnesses and in
part by circumstantial evidence, if they had been told that
Erlichman might be considered an accomplice.   They already
knew that Erlichman had done disgraceful things.   They can-
not have been in doubt about that.   The only question as to
which they were in the dark was whether these disgraceful
things charged him with the guilt of this particular crime.
Even though they held him to be an accomplice, it was not
their duty to reject his testimony if they found it credible
and corroborated; and corroboration is not required to prove
the whole crime; it is sufficient if it tends to connect the de-
fendant with the commission of the crime (People v. Becker,
215 N. Y. 126, 137).   In this case it went beyond the require-

ments of that rule. If the corroborating evidence had been slight or equivocal, a different problem would be before us. But the implications of this verdict forbid the conclusion that the jury, if instructed that Erlichman might be added to the list of accomplices, would have ignored the corroborating evidence against Swersky, and voted for acquittal. The chance that they would have done so is so remote that in the reasonable administration of justice it may be ranked as negligible and illusory.

A significant incident at the close of the trial dispels, we think, any doubt that might otherwise remain. Through it the thought and purpose of the jurors stand clearly revealed. They came back into court and asked to have the testimony of the Erlichmans read to them. The foreman said: " We wish to refresh our minds as to the testimony of Mr. Erlichman which seemed to connect the defendant Kalhofer with a knowledge of the poisoning of horses, and also that portion of Mrs. Erlichman's testimony which in the same way connected, or seemed to connect them in any way." The court responded: " In other words, you wish to have read that part of the testimony of the Erlichmans to see if there is anything in the testimony tending to connect Kalhofer with the commission of the crime. Is that right? " The foreman: " That is right, your Honor." We can reasonably interpret this request in but one way. The jury were in doubt about Kalhofer, and needed the testimony of the Erlichmans to make sure that he was a party to the crime. They did not need it to satisfy themselves about Swersky. Swersky's connection was established in too many ways.

In these circumstances we think it is our duty to apply to the conviction of Swersky the rule laid down in section 542 of the Code of Criminal Procedure, which requires us to give judgment " without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." In the nature of things, there can be no hard and

fast formula descriptive of the errors that must be disregarded in obedience to this rule. Some cases have said that the error must be one which by no possibility could have affected the result. By this, however, is not meant a strict or literal possibility. We are to consider what may in reason be expected from reasonable men. In substance, if not in form, we have applied that test in recent cases (People v. Ferola, 215 N. Y. 285, 292). Applying it, we are satisfied that even though Erlichman had been characterized as an accomplice, the jury would have found that Swersky was guilty of this crime.

The judgment of conviction of the defendant Kalhofer should, therefore, be reversed and a new trial ordered, and the judgment of conviction of the defendant Swersky should be affirmed.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, CUDDEBACK, SEABURY and POUND, JJ., Concur.

Judgment accordingly.