THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALEXANDER R. CROSSMAN, Appellant.

First Department, February 6, 1925.

Crimes — bucket shops — violation of Penal Law, § 390, subd. 1 — defendant is charged with "making" contracts for purchase of corporate stock without intending bona fide purchase — defendant was active head of firm — witnesses — accomplices — nominal head of firm who took no active part in business and bookkeeper who merely made bookkeeping entries at direction of defendant not accomplices in making alleged contracts — mere knowledge of character of business not sufficient to make witnesses accomplices — not error to rule as matter of law that said witnesses were not accomplices.

On a prosecution for a violation of subdivision 1 of section 390 of the Penal Law, in which the defendant is charged with "making" contracts respecting the purchase of stock on margin without intending a *bona fide* purchase or sale, the nominal head of the firm of which the defendant was the organizer and active manager, and the bookkeeper whose duties were to make entries at the direction of the defendant, were not accomplices of the defendant, and it was not error for the court to hold, as a matter of law, that they were not accom-

43

plices, since it appears that the defendant organized the alleged brokerage company under the name of the nominal head of the company; that the witness who was the nominal head of the company took no part whatever in the business of the firm except to be present in the offices and to sign checks and letters at the direction of the defendant and did not take any part in making the alleged sales on which the prosecution is based; that the bookkeeper, the other witness, while she knew that the firm was a bucket shop and knew also that the accounts which she kept were fictitious, performed her work as book-keeper under the immediate supervision of the defendant and did not have anything to do with the sales in question except to take the money paid by the purchaser and give it to the defendant.

Under the evidence, neither the bookkeeper nor the nominal head of the firm aided or abetted the making of the alleged contracts within the meaning of section 2 of the Penal Law.

Said witnesses did not directly or indirectly counsel, command, induce or procure the defendant to commit the alleged crime, and the mere fact that they knew the character of the business being conducted by the defendant and that it was illegal, does not show that they conspired in advance to make the sales in question; mere guilty knowledge, where one does not in some way participate in the crime, does not make him an accomplice.

APPEAL by the defendant, Alexander R. Crossman, from a judgment of the Court of General Sessions of the Peace in and for the County of New York, rendered on the 11th day of April, 1923, convicting him of the crime of violating subdivision 1 of section 390 of the Penal Law on the charge of making a contract respecting the purchase of stock on margin without intending a *bona fide* purchase or sale.

Defendant was sentenced to imprisonment for a term of not less than two nor more than three years. The trial judge gave the defendant a certificate of reasonable doubt.

*George Z. Medalie,* for the appellant.

*Joab H. Banton, District Attorney [Robert C. Taylor, Assistant District Attorney,* of counsel], for the respondent.

BURR, J.:

Defendant was convicted of violating the Penal Law (§ 390, subd. 1) in making a contract with Benno Eibach on two different occasions, February 9 and February 18, 1922, for the purchase on each occasion of 100 shares of Radio stock, intending at the time that no actual purchase would be made and that the account would be settled upon fictitious figures based upon market prices and without intending a *bona fide* purchase and receipt of said securities for and on behalf of the said Benno Eibach.

Anna Ehrlich and Samuel Livingston were the two chief witnesses against defendant. No other witness testified to the existence of a bucket shop, of its operation, or to the details of the bucketing of the Eibach orders. Their testimony was to the effect that the

place was a bucket shop, and that no stock was ever intended to be purchased in any transaction; that orders for the purchase or sale of securities were to be given the appearance of having been executed by the maintenance of fictitious accounts with fictitious balancing entries, and that they knew that the entire scheme was fraudulent and the transactions were fictitious. Each of them testified, also, to certain specific things done by each of them in connection with the business and with each of the Eibach purchases after such purchases had taken place.

The trial court ruled that the witnesses Ehrlich and Livingston were not accomplices as a matter of law, and refused to submit to the jury the question whether, in fact, they were accomplices.

A single claim of error is now made. It is the contention of the appellant that the trial court erred in not instructing the jury that Ehrlich and Livingston were accomplices as matter of law, and in refusing to submit to the jury that question of fact whether they were accomplices.

The evidence shows that the corporation of S. M. Livingston & Co., Inc., of which the defendant was the manager, was formed about September, 1921. Livingston at that time was penniless and the recipient of the defendant's charity. He lived in the same house with defendant. Livingston first met the defendant in Paris in 1918. In the summer of 1921 defendant told Livingston that, as Livingston had sustained severe losses in his importing business, he, the defendant, would do Livingston a good turn for the kindness Livingston had shown the defendant in Paris; that the defendant was a stockbroker and would take Livingston in the stockbrokerage business and would make him his partner. Defendant said for obvious reasons, which Livingston did not know, he, the defendant, could not use his own name. Livingston had never been in Wall street and then knew nothing about it, and told defendant he knew nothing about the business. Defendant said he had had the experience and was able to teach Livingston everything necessary in a short time. He also told Livingston that no personal liability would attach, in view of the corporate form.

When the corporation was organized Livingston says the stock consisted of 250 shares, of which he received one; that he indorsed his share in blank, and gave it to the defendant, who held it, as far as he knew. Livingston was a director and he and all the other directors wrote out their resignations and gave them to the defendant upon the day the company started. Livingston received no wages, salary or regular emolument; but occasionally a quarter for cigarettes and other sums so trivial he could not recall them. Once, however, he got $500. The defendant made arrangements

with the landlord; hired the employees; paid them; discharged the bookkeeper; dictated all letters; composed the weekly market letters, and gave all orders.

Part of the proof that the orders in this and other cases were "bucketed" was that fictitious accounts were kept. The bookkeeper, Miss Ehrlich, testified that these entries were made pursuant to defendant's directions.

That defendant was manager was fully established by his own letter. This testimony shows that S. M. Livingston & Co., Inc., was a mere shell and that the defendant was trading solely upon his own account and using the corporate form to protect himself against personal liability.

Eibach, the customer, was a restaurant keeper. On February 9, 1922, he gave an order to buy 100 Radio at three and seven-eighths, and paid $185. In that transaction Eibach had dealt with Baumeister. Baumeister frequently rang Eibach up and told him to buy another 100 Radio; that it would go up. Eibach ordered a second lot of Radio at $4 and went down and paid $150. About February twenty-eighth Baumeister called Eibach up and said they needed more money as the stock was dropping. Eibach got a check for $75, went down and paid it in. Eibach's dealings were entirely with Baumeister. Baumeister took Eibach's money and gave him receipts. Baumeister was not called as a witness. He was there every day; a sort of manager who introduced people as they came in. Eibach paid $185 upon February ninth. The bookkeeper, Miss Ehrlich, said she had nothing to do with Eibach. She handled this money after it was paid in and gave it to the defendant. Upon February twentieth Eibach paid $150. Livingston received this $150 from Baumeister and gave the money to the defendant, less $15, which Livingston kept to pay his hotel bill.

That Eibach's orders were "bucketed" was conclusively proved. Fictitious accounts were kept. Miss Ehrlich kept the books and records, ledger, blotter, purchase and sales book. The defendant saw these books, and the entries in them were made under the defendant's directions. They purported to record actual transactions of various customers, including this complainant, Eibach. They contained two fictitious accounts. Account No. 1001: In order to balance the customers' accounts, the bookkeeper testified that an entry was made, though no stock had been bought, the entry being a "dummy sheet." These entries purported to show that Radio stock had been bought to fulfill Eibach's orders. Such entries were made daily in the purchase and sales book and ledger. No entry was made from whom the stock was pretendedly bought, or showing an account with any other broker. Account No. 1001

was fictitious. There was also another account, known as the "Stewart" account, which was also fictitious.

All Miss Ehrlich did was to make entries as she was told. She had nothing to do with the customer Eibach. Eibach said he had never talked with her and did not know her. She drew some of the receipts, handled some of Eibach's money, which she gave to this defendant or to Baumeister, and made fictitious entries. Her testimony shows that she had knowledge at all times that the place was a bucket shop and she also knew that Eibach's orders were bucketed.

There is no pretense that these bucketing contracts were made with Livingston. Eibach's dealings were with Baumeister. He spoke of seeing Livingston "sitting outside on a bench," once, but did not know what he was doing. He had a talk with Livingston about the weather and the market. Livingston gave no market advice, but was talking about Studebaker and other stocks in which Eibach was not interested. Livingston was the president of S. M. Livingston & Co., Inc. He was the nominal head. His arrangement with defendant was to look wise, so that the employees would not know he was a greenhorn until he had learned the game. He signed checks. He signed all letters. His *facsimile* signature was attached to the concern's market letters. But these market letters were also prepared by the defendant.

At the outset Livingston did not understand that he was about to engage in a dishonest business; but he freely admitted that, about January 1, 1922, he knew that the concern was engaged in "bucketing;" that such was the defendant's express intention as respects every customer; that he was engaged in a business in which no orders were to be executed; that this customer Eibach's orders were not to be executed, and that he then knew the accounts were fictitious.

There would seem to be no doubt from the evidence in this case that Livingston and Miss Ehrlich knew that defendant was operating a bucket shop, that the accounts were fictitious, and that the transactions with all customers, including Eibach, were bucketed.

This indictment is drawn under the Penal Law, section 390, which contains four subdivisions.

Subdivision 1, so far as material here, applies to any person, copartnership, etc., who shall "make * * * any contract respecting the purchase or sale * * * of any securities, * * * intending that such contract shall be terminated, * * * upon the basis of the public market quotations * * * and without intending a *bona fide* purchase or sale of the same."

Subdivisions 2 and 3 are variants of subdivision 1.

First Department, February, 1925.   ·   [Vol. 211

Subdivision 4 first broadly forbids keeping a bucket shop; and then prohibits any one from knowingly permitting, allowing or inducing any other person to engage in making bucketing contracts.

Subdivisions 1, 2 and 3 are specific and forbid " making " particular bucketing contracts. Subdivision 4 is general, and designed to forbid the keeping of a bucket shop in any way.

The indictment is in two counts. The first count alleges a violation of subdivision 1, *supra.* The second count is concededly based upon the latter part of subdivision 4.

The first count sets up the " making " of two particular contracts, each for the purchase of 100 Radio stock; and that this was done " without intending a *bona fide* purchase and receipt " of such securities.

The second count alleges, *inter alia,* that this defendant permitted, etc., " divers persons " to make certain contracts with the customer. It then sets out the two contracts for the purchase of 100 Radio each; and virtually reiterates the corresponding allegations of the first count. The second count was withdrawn from the jury.

The essence of subdivision 1 of section 390 and of the first count is in the word " make."

The evidence fails to show that these alleged accomplices had anything to do with this " making."

The defendant was convicted under the first count of " making " two specific contracts. The alleged accomplices, Livingston and Ehrlich, could not be stamped as accomplices unless it appeared by testimony that they were principals, as defined by the Penal Law, section 2, in the very act of " making," for which defendant was convicted. It is established beyond question that neither Livingston nor Ehrlich took part in the very acts of " making." Both contracts were " made " with Baumeister, this defendant's *alter ego.* Neither Livingston nor Ehrlich knew of the " making " until after the event, and this is the view of the testimony taken by the trial judge.

We believe there is nothing in the evidence to support the claim that Ehrlich, the bookkeeper, who did nothing but subsequently handle Eibach's money, and make book entries, and that Livingston, who did nothing but look " wise " and sign letters and checks, could be convicted of " making " the contracts with Eibach.

When the second count was taken from the jury, the question for the jurors was not whether the defendant was running a bucket shop generally, but whether he had " made " two specific contracts with Eibach.

Under our law, one cannot be an accomplice unless he is a " principal " in the very crime for which the chief offender is being

tried. The accepted test was laid down by this court: " To constitute an accomplice one must be so connected with a crime that at common law he might himself have been convicted either as the principal or as an accessory before the fact." (*People* v. *Zucker*, 20 App. Div. 363, 365; affd., 154 N. Y. 770, upon opinion below.) This formula has been frequently restated. (*People* v. *Bright*, 203 N. Y. 73, 78, 79; *People* v. *Sweeney*, 213 id. 37, 46, 47; *People* v. *Swersky*, 216 id. 471, 476; *People* v. *Cohen*, 223 id. 406, 425; *People* v. *Elliott*, 155 App. Div. 486, 495.)

One who would have been an accessory before the fact at common law is now made a " principal " by the Penal Law, section 2. (*People* v. *Bliven*, 112 N. Y. 79; *People* v. *Galbo*, 218 id. 283.) Hence, before these alleged accomplices can be regarded as such, it must appear that they were " principals " in the very act of " making " the two contracts. The evidence must establish this. " Speculation and suspicion " will not suffice. (*People* v. *Swersky, supra.*)

The question is, did Ehrlich and Livingston aid and abet or counsel in the commission of the crime charged? The Penal Law, section 2, defines a principal as: (1) One who " directly commits " the offense, or (2) " aids and abets in its commission," or (3) " directly or indirectly counsels, commands, induces or procures another to commit a crime." As neither of the alleged accomplices had anything to do with " making " the two contracts, and did not know of their " making " until later, they do not fall within the description contained in said section 2 of one who (1) " directly commits " the offense, or (2) " aids and abets in its commission." The question remains whether either is comprehended by the words (3) " directly or indirectly counsels, commands, induces or procures another to commit a crime."

At common law one who counseled and advised a crime, but was not present when it was committed, would have been an accessory before the fact, but not a principal. The purpose of section 2 of the Penal Law and its antecedent statutes was to abolish this distinction and to make all principals. (*People* v. *Bliven*, 112 N. Y. 79; *People* v. *Galbo*, 218 id. 283.)

The chief purpose of the section, as evidenced by the words " counsels, commands, induces or procures another," was to reach those who are described colloquially as " higher up," or the " master minds," who use others as " tools " to carry out their criminal designs. In this case the defendant, as contrasted with Livingston and Ehrlich, was manifestly the man " higher up " and the " master mind." Livingston and Ehrlich were, manifestly, defendant's " tools." The bookkeeper, Ehrlich, had been hired to keep the books and obey orders. Livingston's part was to lend

the name under which the corporation, S. M. Livingston & Co., Inc., paraded; and, otherwise, to "look wise" and do nothing but sign letters and checks. There is not a shred of evidence that either "counseled, etc., another" to commit this crime; and the trial judge expressly so ruled, saying: "Of course, Miss Ehrlich and Livingston cannot be charged with inducing or procuring Baumeister to make the contract. The contract was made with Baumeister. Neither of them can be chargeable with procuring or inducing Baumeister to make the contract. The jury might find that the defendant was so chargeable * * *."

Appellant contends that these alleged accomplices, Livingston and Ehrlich, "conspired in advance" with defendant to conduct a bucket shop with a view to "victimizing" all possible customers, including Eibach, and claims that the opinion rendered by the Court of Appeals in *People* v. *Swersky* (216 N. Y. 471) applies and demonstrates that Livingston and Ehrlich should have been treated as accomplices.

*People* v. *Swersky* (*supra*); *People* v. *Cohen* (*supra*), and *People* v. *Duffy* (160 App. Div. 385) all lay down the same rule. Each considered the status of a witness who had been a mere "tool," employed by others "higher up." In each case the "tool" had been employed in some part or other of the nefarious work which the men "higher up" were doing. But these several employers did not use these "tools" in the performance of the *particular acts* for which they were tried and convicted. Hence, the "tools" having done nothing with respect to those *particular acts*, the court held they were not accomplices.

In the case at bar the offense was the specific one of "making" two forbidden contracts. Whatever the alleged accomplices, Livingston and Ehrlich, may have done, they took no part in this "making." Hence under the *Swersky*, *Cohen* and *Duffy Cases* (*supra*) they cannot be regarded as accomplices.

Appellant's contention that Livingston and Ehrlich were accomplices, because, as he claims, they entered into a conspiracy with the defendant to run a bucket shop and victimize all customers is futile for the reason that defendant was not convicted of running a bucket shop. A conspiracy is an illegal agreement. There must be evidence adduced which fairly tends to prove its existence. It cannot be gathered from "speculation and suspicion." There is no evidence that the bookkeeper, Ehrlich, agreed in advance to aid defendant in running a bucket shop. At the outset Livingston did not understand that he was about to engage in a dishonest business; but he freely admitted that he knew, about January 1, 1922, that the concern was engaged in bucketing. All that can be

inferred from the testimony is that both Livingston and Ehrlich knew that bucketing was going on, and made no protest, but continued to render their respective menial services. Such guilty knowledge is far from proof that either of them agreed in advance to do anything illegal.

It has been repeatedly held that mere guilty knowledge, where one does not in some way participate in the commission of a crime, does not make him an accomplice. In *People* v. *Swersky* (216 N. Y. 471, 476) the court said: " It is also true that one does not become an accessory before the fact by the mere approval of a crime after the event. Indeed, mere approval before the event may not always suffice to charge one under the common law as accessory, or under the present law (Penal Law, § 2), as principal (1 Whart. Crim. L. [11th ed.] § 266). Long ago it was said in Hale's Pleas of the Crown, 616: ' And therefore words that sound in bare permission make not an accessory.'

" Enough must be shown to justify the inference that the offender (meaning the alleged accomplice) has counseled or induced or encouraged the crime (Penal Law, § 2; *People* v. *McGuire*, 135 N. Y. 639, 642; *Levering* v. *Commonwealth*, 132 Ky. 666, 678)."

Other familiar cases hold that mere knowledge, without participation, does not render one an accomplice. (*People* v. *McGuire*, 135 N. Y. 639, 642; *People* v. *Zucker*, 20 App. Div. 363, 364; affd., 154 N. Y. 770, on opinion below; *People* v. *Cohen*, 223 id. 406, 425; *People* v. *Elliott*, 155 App. Div. 486, 495.)

It was conceded on the trial that the witnesses Livingston and Ehrlich might perhaps have been accomplices in the general running of a bucket shop had the second (general) count of the indictment been submitted to the jury, but that count of the indictment, as previously stated, was withdrawn. There is no evidence in this case that these witnesses participated in " making " any forbidden contracts as charged in the first (particular) count of the indictment under which the defendant was convicted. The evidence in this case does not support appellant's contention, either in point of law or in point of fact, that the witnesses Livingston and Ehrlich were accomplices in the commission of the crime charged against defendant and of which he was convicted.

We are of opinion that the court did not err in refusing to charge as requested by appellant on the accomplice character of Livingston and Enrlich, and as this is the sole error claimed by appellant, it follows that the judgment of conviction should be affirmed.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Judgment affirmed.