No. 22,694.

THE STATE OF KANSAS, *Appellee,* v. JESSE F. MATHES, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Obtaining Property by False Pretenses—Sufficiency of Information.* The information sufficiently charged the crime of obtaining property by false and fraudulent representations.

2. SAME. The information sufficiently charged that false representations were made as to existing facts and not wholly relating to future promises.

3. SAME. The facts narrated in the information and supported by the evidence were sufficient to establish the crime of obtaining property by false and fraudulent representations as to existing facts.

4. SAME—*Obtaining Property by False Pretenses—Instructions.* The trial court's refusal to instruct the jury as requested by defendant was not error.

5. SAME. The instructions given by the court examined, and held to be correct statements of pertinent law.

6. SAME. Instructions intended to advise the jury what were material statements of fact, which, if proven to have been falsely made, would justify a conviction, examined, and held to be correct and pertinent.

7. SAME—*Evidence of Other Transactions Competent.* Evidence of other transactions set on foot by defendant, similar to the one for which defendant was being prosecuted, were competent to show that defendant was well aware of what he was doing, to show his usual method of business, and to show his deliberately willful and guilty intent to falsify for the purpose of defrauding the complaining witness.

8. SAME—*Value of Property Obtained by False Pretenses.* It needs no formal evidence to prove that five new Maxwell automobiles and six other used cars of various kinds were worth in the aggregate over $20,

and a defendant who fraudulently obtained them by false pretenses is guilty of a felony.

Appeal from Phillips district court; WILLIAM S. LANGMADE, judge. Opinion filed March 12, 1921. Affirmed.

*N. J. Ward*, and *J. F. McClure*, both of Belleville, for the appellant.

*Richard J. Hopkins*, attorney-general, and *J. W. Barron*, county attorney, for the appellee; *Bennett R. Wheeler, S. M. Brewster*, and *John L. Hunt*, all of Topeka, of counsel.

The opinion of the court was delivered by

DAWSON, J.: The defendant was convicted of a felony for obtaining eleven automobiles by false pretenses.

The state charged and its evidence tended to prove the perpetration of a devious and complicated scheme whereby A. R. Cogswell, of Kirwin, was completely swindled out of $5,400 worth of new and secondhand automobiles by the defendant Jesse F. Mathes, and for which Cogswell received nothing. It appears that as a preliminary to the transaction with Cogswell the defendant made a colorable contract with one Shaffer of Smith county to sell Shaffer a half section of Colorado land for $6,400. Shaffer gave his note to Mathes for $500 thereon, and it was pretended that the balance was to be paid and the title transferred in 60 days, less the sum of $1,000 which represented an incumbrance on the property. This contract between Mathes and Shaffer was executed on September 8, 1917, but the state's evidence tends to show that it was never intended to be carried out. Shaffer had not the means to purchase the property and did not intend to purchase it, but professed to rely on the parole promise of one Sopher to take the land at an advance of a dollar or two per acre. Thereafter Mathes called on Cogswell, an automobile dealer in Kirwin, and told him he had just sold to Shaffer a half section of Colorado land belonging to one Boston, and that Shaffer was shortly to pay $5,400 therefor, and that he had already paid $1,000 thereon; and that Shaffer was well able and willing to pay the balance and to carry out the contract. Mathes also informed Cogswell that Boston, the Colorado vendor, would just as soon have auto-

mobiles as money for his land, and that if Cogswell would allow him a commission he would arrange matters so as to get Cogswell the $5,400 for Cogswell's automobiles and complete the deal within 30 days from October 6, 1917. To that pretended purpose he proposed that the deed to the Colorado land should be executed in blank and deposited in a bank in Beloit; that Shaffer would pay the $4,900 in cash, and he, Mathes, would pay him $500, and that if Shaffer did not carry out his contract, he, Mathes, would take and pay for the land himself, and that he would give Cogswell a surety bond for $5,400 conditioned that if Shaffer did not perform, and in case Mathes did not fulfill his contract, the surety bonding company would pay Cogswell the agreed price for the automobiles. Cogswell closed a contract with Mathes on these terms. Mathes then went to Denver and made arrangements with a surety company to give a bond to secure to Cogswell the sum of $500 as liquidated damages in the event that Mathes did not perform his contract. No bond as agreed upon between Mathes and Cogswell was issued. Shortly thereafter, Mathes called on Cogswell for the automobiles and told him *the bond had been issued,* that *it had been mailed,* and when it arrived Cogswell could deposit it with the cashier and draw $5,400 on it, and that if Shaffer did not carry out his contract and pay for the land, the bond company would be liable for $5,400 and that the bond so provided. To give additional color of truth and reliability to these representations, the defendant caused the bonding company in Denver to telegraph to Cogswell that Mathes had arranged for the issuance of a bond, and also caused a Denver lawyer to write to Cogswell touching certain corrections in the Mathes-Cogswell contract which would redound to Cogswell's advantage, and which were bound to impress Cogswell with Mathes' honesty. Part of this letter reads:

"Mr. Jesse F. Mathes has called upon me in reference to the contract between him and you. . . . We have, therefore, made an insertion in the contract. . . . We also made one other correction in the contract, changing party of the first part to party of the second part, because as the contract originally was worded, the $500 was to be paid by you, whereas it is to be paid by Mr. Mathes. These changes have been made in accordance with the request of Mr. Mathes, and are supposedly in accord with your wishes."

With all these assurances of Mathes, part of which related to pretended existing facts and part of which related to future promises, Cogswell surrendered the automobiles to Mathes, but for all this property he has never received one cent. As soon as the automobiles were delivered, Mathes hastened to Shaffer and called off the deal with him for the sale of the Colorado land—if that deal ever was *bona fide*.

The foregoing is only a summary of the significant facts attempted to be charged and proved by the state.

A jury trial resulted in a conviction of the defendant, and judgment and sentence were pronounced pursuant thereto. Defendant appeals, assigning many errors which will be noted.

The defendant's first contention is that the information should have been quashed because it contained no allegation that defendant had actually defrauded the complaining witness. No such defect can be discerned in the information. It narrated the facts, specifically recited the alleged false and fraudulent representations of Mathes, Cogswell's reliance thereon, and his surrender of the automobiles to Mathes pursuant thereto.

It is next urged that all the material representations of Mathes which induced Cogswell to part with the automobiles related to future promises and not to then present or past facts. Not so. The evidence tended strongly to show that the sale of the land to Shaffer whereby the money was to be forthcoming to pay for the automobiles was not *bona fide*. It seems to have been only the thinnest kind of a colorable sale, designed merely to furnish Mathes with a talking point and to lay the groundwork for the operation of his project to defraud Cogswell. At least the jury were justified in so construing the pretended sale to Shaffer. Moreover, Mathes positively assured Cogswell that a surety bond for $5,400 had been issued for Cogswell's protection, and that it had been mailed; and Mathes caused the telegram and letter to be sent from Denver to give additional color of assurance to those false representations, upon which Cogswell relied and acted. And these representations related to material facts, represented to be then in existence, and did not relate to future promises—that gap in the fence of criminal jurisprudence through which so many rogues have escaped unwhipped of justice. (*In re Snyder, Petitioner,*

&c., 17 Kan. 542, 556.)  In *The State v. Gordon,* 56 Kan. 64, 42 Pac. 346, it was said:

"The mere fact that a false pretense of an existing or past fact, by reason of which the owner of money or property is induced to part with the same, is accompanied by a future promise, will not take the case out of the operation of the statute which prohibits and punishes the obtaining of money by false pretenses." (Syl. ¶ 1.)

(See, also, *The State v. Terrill,* 87 Kan. 745, 749, 125 Pac. 65.)

Nor is it even necessary that the falsity of all the representations relied upon by the defrauded party be established. The proof of any one material misrepresentation, relied on and inducing the surrender of the property, is sufficient. (*The State v. Hetrick,* 84 Kan. 157, 113 Pac. 383; 19 Cyc. 394-399.)

It may be admitted that the false representations that Shaffer would buy the land, that Mathes would if Shaffer did not, and that Mathes would procure a surety bond for $5,400 to Cogswell, would relate to future events and future promises, and be insufficient either to charge or prove the crime of obtaining money by false pretenses, however reprehensible such conduct might be. But Mathes represented these matters as existing facts—that he had sold the land to Shaffer, that Shaffer was rich and able and willing to pay, that the surety bond to protect Mathes had been issued, and that it had been mailed. And not one of these material facts was true. The court is bound to hold that the information was sufficient.

The above observations also dispose of the errors assigned relating to the rulings of the court on the demurrer to the state's evidence, the motion to direct a verdict, and in rendering judgment.

Error is also urged because the trial court refused to instruct the jury that the only representation made by defendant which was relied on by Cogswell and upon which Cogswell surrendered his property was the statement of Mathes that he would furnish a bond for the purchase price. Such an instruction would have been highly improper and would have been a gross interference with the proper administration of justice. So far as the evidence goes, it appears that Cogswell's credulity extended to all the false statements of fact—as well as the false future promises—made by Mathes, although it

may be true that if he had disbelieved any one of Mathes' statements, whether of fact or of promise, he would not have parted with his property.

Error is also based upon the court's instruction relative to the pretended sale of the Colorado land to Shaffer, in that if the jury believed that Cogswell relied in part on the representations of Mathes concerning that transaction and if such representations were false, the defendant could be convicted thereon. The criticized instruction was not improper. Fairly read and not excised from its context, the rule of law was correctly stated. It was not necessary that the falsity of every statement made by Mathes should be established by proof. Proof of the falsity of any one of the statements of fact made by Mathes, if such false statement was relied on by Cogswell and was one of the inducing causes for his delivery of the automobiles, was sufficient to convict the defendant. (*The State v. Briggs,* 74 Kan. 377, 86 Pac. 447; *The State v. Hetrick,* supra.) The instruction is also objected to because it "picks out this one isolated matter which is alleged among a dozen other matters in the information and exhibits it to the jury with undue prominence, as though it were the whole case." The criticism is not well founded. It was necessary for the court to segregate Mathes' false statements as to existing facts from his future promises, so that the jury would understand clearly what facts, if proved, would warrant a conviction; and the matter of the pretended Mathes-Shaffer land deal was not given more prominence than the other matters equally under the ban of the law—the false statement that the surety bond had been issued, that it covered the purchase price, and that it was in the mails.

Another error urged pertains to the testimony of certain witnesses touching other transactions which had been set on foot by Mathes similar to the Cogswell deal. The defendant's abstract does not show that this evidence was objected to nor does it show that any instruction was asked to limit its proper evidential significance. The evidence was admissible to show that defendant was well aware of what he was about in his dealings with Cogswell, that such representations as he made to Cogswell were part and parcel of his usual method of business, and it tended to show his deliberately willful and guilty

intent to falsify for the purpose of defrauding Cogswell. An elaborate note on this subject will be found in 105 A. S. R. 976. At page 1000 we read:

"Where the offense with .which the defendant is charged was consummated by a trick, fraud or a system of acts or representations, antecedent acts or transactions are admissible to show the criminal intent or guilty knowledge of the defendant. *Rafferty v. State*, 91 Tenn. 655, 16 S. W. 728. The reason for this rule is based on the idea that one who commits a series of acts bearing close similarity and connection with each other and clearly evincing a similar intention in each, has in all likelihood the same intent in another act of the same nature and clearly connected with such series; *Baker v. State*, 120 Wis. 135, 97 N. W. 566. Even though two transactions claimed to be part of a system of confidence games differ in details, still they are admissible where similar in general outline: *State v. Jackson*, 112 Mo. 585, 20 S. W. 674. In this connection see *Du Bois v. People*, 200 Ill. 157, 93 Am. St. Rep. 183, 65 N. E. 658, for a series of swindling transactions with respect to worthless mining stock in which the details were varied somewhat. ·. . .

"So, also, where the defendant is being prosecuted for obtaining money under false pretenses by having sold tickets to an advertised exhibition as a mesmerist and after having sold a large number of tickets absconded. Evidence of other tickets sold at the same time is admissible: *State v. Sarony*, 95 Mo. 349, 8 S. W. 407. Likewise, in prosecutions for embezzlement, other items collected but not accounted for are admissible: *People v. Bidleman*, 104 Cal. 608, 38 Pac. 502; *People v. Van Ewan*, 111 Cal. 144, 43 Pac. 520; *Jackson v. State*, 76 Ga. 551; *People v. Hawkins*, 106 Mich. 479, 64 N. W. 736. The same rule was applied in a prosecution of an overseer of poor for defrauding the county by filing fraudulent claims: *State v. Brady*, 100 Iowa, 191, 62 Am. St. Rep. 560, 69 N. W. 290, 36 L. R. A. 693. And in a prosecution of an insurance solicitor for making false pretenses to the state agent in respect to the *bona fides* of a fictitious application for insurance, upon the basis of which he obtained an advance on the commission accruing to him, evidence of details of similar fictitious applications in furtherance of an alleged advertising scheme was held competent upon the question of intent: *State v. Seligman* (Iowa), 103 N. W. 357. So, also, in prosecutions for arson. Other fires related in plan and execution are held admissible: *People v. Zucker*, 20 App. Div. 363, 46 N. Y. Supp. 766, affirmed in 154 N. Y. 770, 49 N. E. 1102; *Rafferty v. State*, 91 Tenn. 655, 16 S. W. 728."

(See, also, *The State v. Wheeler*, 89 Kan. 160, 165, 130 Pac. 656; *The State, ex rel., v. Stout*, 101 Kan. 600, 601, 602, 168 Pac. 853.)

It is also urged by defendant that his guilt could not be predicated alone upon the falsity of the representations made by Mathes, but that he also must have known that they were

The State v. Mathes.

false when he made them.   This feature of the law was sufficiently covered in the court's instructions.

Still another contention of defendant is that the verdict was insufficient to justify a judgment imposing a punishment for a felony.   The verdict found the defendant guilty as charged in the information.   It is said that the value of Cogswell's automobiles which defendant had obtained by false and fraudulent representations as charged in the information had not been established, that it was not shown that the eleven automobiles—five new Maxwells and six used cars of various kinds—were worth in the aggregate over twenty dollars so as to constitute a felony.   We think the jury and the trial court knew that fact without formal evidence.   (*The State v. Bratcher*, 105 Kan. 593, 185 Pac. 734; *The State v. Phillips*, 106 Kan. 192, 186 Pac. 743.)

A final and general objection to the judgment is that the evidence did not prove that an actual fraud had been committed, but this court is of opinion that this point is the least meritorious of all.   The evidence fairly shows that Mathes concocted and perpetrated a scheme whereby he defrauded Cogswell out of this large amount of property; it shows the various maneuvers and mystifications, the false statements as to existing facts entwined with future promises, by which Mathes effected his purpose; and from the whole record no doubt of his guilt can be entertained.   Doubtless the defendant believed he had devised a scheme for separating gullible people from their property without paying for it and without getting into the penitentiary.   The law does not intend that even the most ingenious of such stratagems should succeed. Defendant's scheme failed, and he must take the consequences.

The record contains no error and the judgment is affirmed.