No. 33,395

The State of Kansas, *Appellee*, v. (Fred N. Dreiling) Don V. Meyer, *Appellant*.

(78 P. 2d 4)

Opinion filed April 9, 1938.

*L. E. Quinlan,* of Lyons, for the appellant.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Ralph A. Rodgers,* county attorney, for the appellee.

The opinion of the court was delivered by

Thiele, J.: Don V. Meyer was convicted of the crime of obtaining property by false pretenses, and appeals to this court. His sole contention is that the state's evidence, all taken as true, did not prove facts sufficient to sustain the charge contained in the information.

The information charged that one Dreiling and the appellant, Don V. Meyer, went to the home of James Larsen and represented they were buyers of Woods Brothers stock and had heard Larsen owned some of it; that they would have to inspect it before purchasing; they induced Larsen to go to a bank and get his certificates; that with that stock Larsen also showed them stock in United Telephone Company; that Dreiling and Meyer informed Larsen they could not use the Woods Brothers stock unless he assigned the telephone stock; that they would pay Larsen $1,000 for the telephone stock and $2,750 for the Woods Brothers stock at the rate of $110 per month; that each of them had oil royalties coming in and they would give him a sufficient and bankable guaranty in writing that the payments would be made; that if Larsen would let them have the stock certificates, they would be back with the guaranty in writing, during which time they would hold the stock certificates, and if the guaranty was not satisfactory they would return the certificates to Larsen; that Larsen, believing the representations and pretenses

to be true, assigned and delivered the stock certificates to Dreiling and Meyer; that Dreiling and Meyer took the certificates of stock, did not return with the guaranty, did not return the stocks, did not pay anything for them, and on the same day they got possession sold the telephone stock, and shortly thereafter sold the Woods Brothers stock; that all representations made by Dreiling and Meyer were false and fraudulent and designedly made to cheat and defraud Larsen; that Dreiling and Meyer did not come to Larsen for the purpose of buying the stocks, and did not intend to pay him for them; that the acts and words of Dreiling and Meyer were done and spoken without any intention on their part to perform, but to cheat and defraud Larsen, etc., and by reason thereof they did cheat and defraud him of the certificates of stock.

The state offered its evidence, and at the conclusion thereof appellant moved the court that he be discharged for the reason the evidence failed to establish facts sufficient to sustain the charge contained in the information. In this court the complaint is that the claimed statements made by Dreiling and Meyer, which induced Larsen to part with his property, did not refer to past or present facts, but to future transactions and events, and therefore were not the basis of a criminal action.

We need not detail fully the evidence which supported the charges in the information. Dreiling and Meyer came to Larsen's place and inquired about the Woods Brothers stock, and persuaded him to meet them in town, and to get the stock from the bank where he kept it. Larsen got an envelope containing the stock and handed it to Meyer, who opened it. With the certificate for Woods Brothers stock was the telephone stock. Larsen was immediately informed that Dreiling and Meyer could not buy the Woods Brothers stock unless they also got the telephone stock. Larsen was persuaded to go to the post office and execute assignments, where the postmaster could witness his signature, and to surrender possession to Meyer, who was to return with bankable security that Dreiling and Meyer would perform their agreement to pay him therefor in the manner indicated hereafter. Appellant singles out the statement that he and Dreiling were to pay Larsen for the stock in the future out of oil royalties, and some argument is predicated on the fact that Larsen did not inquire where the royalties were located and ascertain there was an assured income from which he could be paid, and that it was all a promise as to something to be done in the future. The evi-

dence showed that Dreiling and Meyer obtained possession of the stock certificates on their promise the stock would be held until they returned that day with bankable security; that they stated they had oil royalties and a sure income; that four or five days later Larsen signed the contract relying on the fact he was to get the guaranty; thereafter, he learned from them they had no oil royalties; that he did not get the guaranty; that he later learned the telephone stock was sold the day he delivered it to Dreiling and Meyer.

Appellant recognizes that the question is: What induced Larsen to part with his property? The evidence warrants a conclusion that he did so because he relied on representations by Dreiling and Meyer that they would take his stock at an agreed price; that they had oil royalties and an assured income from which to pay, and that they would give him a bankable guaranty they would perform. Those representations were of present existing facts; they were not expressions of opinion or of future promises. It was not incumbent on Larsen to make an independent investigation to determine whether Dreiling and Meyer did have the oil royalties and income they said they had. (*State v. Nash,* 110 Kan. 550, 204 Pac. 736.) And even if it be said that some of the representations constituted future promises, their being coupled with representations as to present facts and circumstances did not relieve Dreiling and Meyer. (*State v. Beezley,* 119 Kan. 300, 239 Pac. 998.) And it is a fair inference from the testimony that Dreiling and Meyer, at the time the representations were made, had no intention of performing once they obtained possession of the stock certificates.

In *State v. Clark,* 46 Kan. 65, 26 Pac. 481, it was said:

"To constitute the offense charged in the information, under section 94 of the crimes act, four elements must concur, which should be averred and proved: (1) There must be an intent to defraud; (2) there must be an actual fraud committed; (3) false pretenses must have been used for the purpose of perpetrating the fraud, and (4) the fraud must be accomplished by means of the false pretenses made use of for the purpose, viz.: They must be the cause, in whole or in part, which induced the owner to part with his property (citing cases)." (p. 66.)

Applying that test to the evidence here, it must be held that each of the four elements has been shown. And having been shown, it must follow the trial court properly denied appellant's motion that he be discharged.

The judgment of the trial court is affirmed.