No. 41,278

STATE OF KANSAS, *Appellee*, v. THEODORE L. HANDKE, *Appellant*.

(340 P. 2d 877)

Opinion filed June 13, 1959.

*Joseph P. Jenkins*, of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider* and *John E. Shamberg*, of Kansas City, and *Maurice P.*

*O'Keefe, Sr.,* and *Terence D. O'Keefe,* of Atchison, were with him on the briefs for appellant.

*Robert F. Duncan,* County Attorney, of Atchison, argued the cause, and *John Anderson, Jr.,* Attorney General, and *Robert Roth,* Assistant Attorney General, of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant, Theodore L. Handke, was convicted on a charge of obtaining $3,000 from Herman F. and Bettie Pankey by false pretenses in violation of G. S. 1949, 21-551. He appeals from the overruling of his motion for a new trial, the judgment of conviction, and the sentence of confinement in the State Penitentiary for a term not exceeding five years.

The defendant is a resident of Leavenworth, and was engaged in the business of building houses. From November, 1956, to April, 1957, he entered into construction contracts with numerous persons in Topeka and Kansas City under the name of Handke Construction Co., and later, Crest Homes. Several homes were built by him in Leavenworth from 1953 to 1956. On June 26, 1957, defendant went to Atchison and contacted Mrs. R. H. Abbuehl, whom he employed to receive telephone calls on his behalf from prospective buyers or people who wanted houses built. She communicated that information to defendant, who either telephoned her every morning or stopped at her house. He would not give her his address but did give her his telephone number. He told her that the Built-Right Construction Company was the name of the company that would do the building.

Through this medium the defendant contacted the complaining witnesses, Herman F. and Bettie Pankey, husband and wife, and called upon them at their home on June 30, 1957, where they discussed the construction of a house. Defendant showed them some plan books containing pictures of houses. When they had picked out the house they wanted, he said he would have the plans drawn up in his office. He told the Pankeys that he was building houses in Topeka and Kansas City; that he had three crews of men working for him in Topeka and Kansas City, one crew to construct the basement and foundation, one crew to construct and rough-in the house, and one crew to do the finishing work; that he had built houses on Gutherie Circle, a part of Sunnyhill Subdivision in Atchison; that he owned property out by the hospital, by St. Joseph's church, at 12th and Mound Streets, as well as three lots in Gutherie

Circle and they could have their choice, and that he would commence work immediately and would build the house and have them moved into it in 60 to 90 days.

The Pankeys selected a lot in Gutherie Circle and the parties entered into a construction contract which provided for the building of a house by defendant for the sum of $12,500. The contract was a printed form provided by the defendant. After the contract was signed and at the defendant's request the Pankeys gave him a check for $3,000 as a down payment. The defendant told them he needed the money to purchase building materials so construction of the house could begin immediately, otherwise he would have to borrow money himself, which would delay commencement of construction. The contract provided that defendant would have one year in which to build the house, and at the time the agreement was signed Pankey objected to this provision but the defendant said there was no reason to change it; that he owned the company and would keep his word and build the house within 60 to 90 days. Pankey read the contract before he signed it but his wife did not.

Not hearing from the defendant for some time after the contract was signed, Pankey went to Leavenworth on July 12, 1957, to see the defendant and talk to him about "some things he had heard about him," but was unable to locate him. On July 22, 1957, Pankey made another trip to Leavenworth to see the defendant and this time saw a note on his office door stating that he was on vacation and would re-open the office on August 10, 1957.

The next day, July 23, 1957, Pankey consulted the county attorney of Atchison county and that same day they went to Leavenworth to find the defendant, but could not locate him. The Pankeys did not talk with defendant again during July, but did receive a telegram from him on July 31, 1957, and later a letter stating that he would send the blueprints of their house before too long. Later they received a questionnaire for an FHA loan, and on August 10, 1957, they received the blueprints.

On August 3, 1957, a complaint was filed charging the defendant with obtaining money by false pretenses from Herman Pankey, and a warrant was issued for his arrest. On August 9, 1957, the defendant was arrested and placed in jail where he remained until August 30, 1957, at which time a preliminary hearing was held and he was discharged. Following his discharge, and on the same day the same charges were re-filed and he was re-arrested but was

released on bond. At the second preliminary hearing on April 4, 1958, he was bound over for trial at the next regular term of the district court for a violation of G. S. 1949, 21-551.

On April 4, 1958, an information was filed containing one count charging the defendant with obtaining $3,000 on July 1, 1957, from Herman and Bettie Pankey by false and fraudulent misrepresentations and pretenses. On April 24, 1958, an amended information was filed, alleging the same offense but more detailed, containing seven separate false and fraudulent misrepresentations and pretenses. The defendant then filed a plea in abatement upon grounds that he had not been bound over for trial for any alleged crime against Bettie Pankey, which was overruled, and upon trial by a jury the defendant was found guilty.

The questions presented in this appeal will be disposed of in the order in which they were raised. It is first contended that since the amended information charged the defendant with obtaining money by false pretenses from a person (Bettie Pankey) whose name did not appear on the complaint or warrant when the preliminary hearing was held, he was denied the right to have a preliminary examination on that charge contrary to the provisions of G. S. 1949, 62-805, and the district court erred in overruling his plea in abatement. We think the contention is without merit.

In the early case of *State v. Smith*, 13 Kan. 274, 296, the defendant was arrested on a charge of embezzling a certain sum of money belonging to the county of Leavenworth. The information charged him with embezzling a larger sum of money belonging to several designated funds in the treasury of that county. Defendant's plea in abatement upon the ground that he did not have a preliminary examination as to the embezzlement of any money belonging to any person other than Leavenworth county was overruled, and this court held there was no error in such ruling. Furthermore, it has been said, that an information is to be framed according to the facts developed at the preliminary examination and it is not required to correspond to the complaint (*State v. Wisdom*, 99 Kan. 802, 803, 162 Pac. 1174).

One of the principal purposes of a preliminary examination is to give a defendant reasonable notice as to the character of the alleged offense and to apprise him of the nature of the evidence he will be required to meet when he is prosecuted in the district court. It is not necessary that all of the details and technical averments re-

quired in an information be set forth in the papers used at the preliminary examination, and the defendant should take notice, from the evidence introduced by the state on such examination as well as from the papers in the case, of the nature and character of the offense charged against him (*Cunningham v. Hoffman*, 179 Kan. 609, 611, 612, 296 P. 2d 1081; *State v. Rangel,* 169 Kan. 194, 217 P. 2d 1063; *State v. Johnson,* 70 Kan. 861, 868, 79 Pac. 732).

In the instant case the defendant was well aware of the fact that Herman and Bettie Pankey were husband and wife; that each participated in the negotiations leading up to the signing of the contract and in the giving of the $3,000 check as a down payment. The contract was signed by both Herman and Bettie Pankey and the $3,000 check was a personalized check with their names printed on its face. In its brief the state asserts, and it is not denied by defendant, that there was an abundance of testimony the $3,000 check was drawn on the Pankeys' joint account. Under such circumstances, it cannot be said that the defendant was not given reasonable notice of the character and nature of the offense with which he was charged or that he was in any way surprised that Bettie Pankey was named in the amended information as one of the defrauded persons (*State v. Wooden,* 110 Kan. 315, 203 Pac. 722). Moreover, the complaint, warrant, and amended information charged the defendant with having committed only one offense and that offense may be alleged in the information in such a manner as to guard against the contingencies of the testimony at trial (*State v. Spaulding,* 24 Kan. 1).

Defendant next contends that the trial court erred in denying his motion for a mistrial after one of his witnesses was arrested for perjury during the trial. As a general rule, it is prejudicial and reversible error for the judge to order the arrest of a witness for perjury in the presence of the jury and during the trial (23 C. J. S., Criminal Law, § 996, p. 357), however, that is not the situation presented. Here, the witness was arrested during the noon recess, after his testimony had been completed, outside the presence of the jury and without the knowledge of the court. Further, it appears that the trial was completed on that same afternoon. Under such circumstances, it has been held that the arrest of a witness does not constitute prejudicial error requiring a reversal of the verdict and judgment (*Young v. United States,* 107 F. 2d 490; *Nolan v. Commonwealth,* 261 Ky. 384, 87 S. W. 2d 946; *Elkins v. State,* 29 Okla.

Cr. 175, 181, 182, 233 Pac. 491; *State v. Williams*, 124 La. 779, 50 So. 711; *Steel v. State*, 82 Tex. Cr. Rep. 483, 200 S. W. 381; 23 C. J. S., Criminal Law, § 996, p. 358). See, also, *State v. Marshall*, 95 Kan. 628, 148 Pac. 675; *State v. Ketter*, 121 Kan. 516, 519, 247 Pac. 430. Moreover, it was not made to appear the jury was ever aware of the witness' arrest. Without prolonging the discussion on this point, we conclude that no prejudicial error resulted which would require a reversal of the judgment.

Defendant next contends the evidence did not establish that he obtained money by false pretenses from the Pankeys and he was not guilty of a crime as defined by G. S. 1949, 21-551. He argues the state failed to prove the following vital elements of the crime for which he was convicted: (1) that there were false and material representations or statements of a past or existing fact made by defendant; (2) that there was a reliance by the Pankeys upon any of such false representations or statements, and (3) that there was an actual defrauding.

At the outset, it may be stated that to constitute the offense of obtaining money by false pretenses, the state must aver and prove the following four elements: (1) there must be an intent to defraud; (2) there must be an actual fraud committed; (3) false pretenses must have been used for the purpose of perpetrating the fraud, and (4) the fraud must be accomplished by means of the false pretenses made use of for the purpose, that is, they must be the cause, in whole or in part, which induced the owner to part with his money or property (*State v. Metsch*, 37 Kan. 222, 15 Pac. 251; *State v. Matthews*, 44 Kan. 596, 25 Pac. 36; *State v. Clark*, 46 Kan. 65, 66, 26 Pac. 481; *State v. McCormick*, 57 Kan. 440, 442, 443, 46 Pac. 777; *State v. Dreiling*, 147 Kan. 482, 484, 78 P. 2d 4). The rule is stated in 35 C. J. S., False Pretenses, § 6, p. 644, as follows:

"Generally speaking, to constitute the crime of obtaining property by false pretenses there must be a false representation or statement of a past or existing fact, made by accused or someone instigated by him, with knowledge of its falsity and with intent to deceive and defraud, and adapted to deceive the person to whom it is made; and there must be, further, a reliance on such false representation or statement, an actual defrauding, and an obtaining of something of value by accused or someone in his behalf, without compensation to the person from whom it is obtained. . . ."

With respect to the first element argued by the defendant, it may be admitted that representations or statements must relate to past or existing material facts and that representations or statements

relating to future events or promises are not sufficient (*In re Snyder, Petitioner &c.,* 17 Kan. 542, 556; *State v. Cowdin,* 28 Kan. 269, 273; *State v. Briggs,* 74 Kan. 377, 379, 86 Pac. 447; *State v. Beezley,* 119 Kan. 300, 302, 239 Pac. 998). However, the mere fact that a false pretense of an existing or past fact is accompanied by a future promise will not relieve the defendant or take the case out of the operation of the statute (*State v. Cowdin,* supra, p. 274; *State v. Gordon,* 56 Kan. 64, 67, 42 Pac. 346; *State v. Briggs,* supra, p. 380; *State v. Terrill,* 87 Kan. 745, 125 Pac. 65; *State v. Mathes,* 108 Kan. 488, 492, 196 Pac. 607), and, therefore, even though defendant may have made false representations as to future promises or events, he will not be relieved if he also made material false· representations as to existing or past facts. Furthermore, representations as to future promises or events may be considered along with those relating to existing or past facts (*State v. Cowdin,* supra, p. 274) and it is not necessary to prove that all of the representations alleged to have been made were actually made or that they were all false (*State v. Hetrick,* 84 Kan. 157, 113 Pac. 383; *State v. Addington,* 158 Kan. 276, 147 P. 2d 367), any one will suffice.

Did the defendant make false and material representations of past or existing facts? The evidence amply warrants the conclusion that at the time the contract was entered into and the down payment made on July 1, 1957, the defendant did not have building going on in Topeka; that he did not have three crews of men working for him; that he had no intention of having a house constructed for the Pankeys within 60 to 90 days; that he did not contemplate immediate construction; that he did not intend to use the $3,000 paid to him to purchase building materials since he negotiated the check to his wife who deposited it in her personal checking account and drafted checks for personal living expenses and for a family vacation to New Mexico, and that he did not own property situated in the vicinity of the hospital, St. Joseph's church, or on the corner of 12th and Mound Streets. Clearly, those were false representations relating to past or existing material facts. It is a false pretense where a man represents himself to be in a situation or business in which he is not (*State v. Briggs,* supra, p. 380).

Did the defendant's false representations induce the Pankeys to part with their money? We think they did. It is well settled that the persons defrauded must have relied upon the false pre-

tenses made, but it is not necessary to a conviction that the false pretenses be the sole inducement to the obtaining of money or property (*State v. Briggs*, supra, p. 380; *State v. Faulkner*, 139 Kan. 665, 668, 33 P. 2d 175; *State v. Barger*, 148 Kan. 590, 596, 83 P. 2d 648), and the Pankeys need not have relied solely upon the false pretenses. It is sufficient if such pretenses contributed to or were a part of the moving cause which induced them to part with their money; each testified they gave the money to defendant in reliance upon the representations made by him and that testimony was competent to establish the element of reliance (*State v. Hetrick*, supra). See, also, *Bice v. Rogers*, 52 Kan. 207, 34 Pac. 796; *State v. Kirby*, 62 Kan. 436, 63 Pac. 752.

Was there an actual defrauding? Defendant asserts that Pankey, by his own acts in causing the defendant's arrest and imprisonment for some three weeks within the 90-day period made it impossible for him to build the house within that period and there was not an actual defrauding. The defendant was not arrested until some 40 days after the Pankeys made the down payment and during that time he had done nothing toward construction except to have a bulldozer move some dirt around. He did not even attempt to obtain the required building permit. Under such circumstances, it cannot be said that there was not an actual defrauding, or that the Pankeys made it impossible for defendant to build the house.

Defendant next contends the trial court erred in overruling his motion to strike the testimony of several witnesses from Topeka and Kansas City. These witnesses were allowed to testify, over defendant's objections, that he had entered into construction contracts with them which were similar to the Pankey contract; that he had made similar representations to them, that is, that he would build a house for each of them within 30 to 90 days; that they had each made a down payment (the twenty-two Topeka contracts totaled approximately $26,000 in down payments, and more than eighteen contracts were executed in Kansas City with substantial down payments), and that he had failed to perform his part of the contracts or had only partially performed, and had made no refunds. With respect to partial performance of Topeka contracts, he commenced construction of only three basements, and the construction of one house to rough-in. The basements constructed had mechanic's liens filed against them for labor and material which were not liquidated by the defendant, and the purchaser

completed the "roughed in" house himself. No construction was commenced on any of the houses contracted for in Kansas City except one.

The short answer to this contention is that evidence of other transactions, similar to the one for which a defendant is being prosecuted, is admissible to show that he was well aware of what he was doing, to show his usual method of business, and to show his deliberately willful and guilty intent to falsify for the purpose of defrauding the complaining witnesses (*State v. Mathes*, supra; *State v. Briggs*, supra, p. 382; *State v. Nash*, 110 Kan. 550, 204 Pac. 736; *State v. Momb*, 150 Kan. 674, 677, 678, 95 P. 2d 349; *State v. Beezley*, supra). For a discussion of the general rule on this subject see *State v. Myrick*, 181 Kan. 1056, 1059, 317 P. 2d 485 and Anno. 80 A. L. R. 1308-1334. We pause to note, the defendant made no objection to the instructions given by the district court and he has not abstracted them; therefore, we assume the instructions given were correct and fully informed the jury as to how it might consider such testimony in accord with the above mentioned rule (*State v. Barger*, supra, p. 596; *Rierson v. Southern Kansas Stage Lines Co.*, 146 Kan. 30, 69 P. 2d 1).

The defendant's last contention is that it was error to permit witnesses, particularly the Pankeys, to testify, over his objections, with respect to the negotiations leading up to the signing of the contracts in question and particularly with respect to the representations that he would build the houses in 30 to 90 days, inasmuch as such testimony varied the material terms of the various written construction contracts and was inadmissible by virtue of the parol evidence rule. The point is not well taken. In *Griesa v. Thomas*, 99 Kan. 335, 161 Pac. 670, it was held that:

"The ordinary rule that a written contract speaks for itself and that parol evidence to show the oral statements, representations and negotiations of the parties which led up to the contract is inadmissible has no application to written contracts procured by the fraudulent representations of one of the parties and which were relied upon by the other." (Syl. ¶ 4.)

In *Stegman v. Professional & Business Men's Life Ins. Co.*, 173 Kan. 744, 751, 252 P. 2d 1074, it was said:

". . . An invariable qualification of the rule which makes parol evidence inadmissible to vary the terms of a written instrument is the one which permits such testimony where a contract is induced or procured by fraud. (Cases cited.)" (l. c. 751.)

See, also, *Logan v. Collinson,* 114 Kan. 620, 220 Pac. 291; *Dimmock v. Ploeger,* 125 Kan. 461, 264 Pac. 1044. As previously indicated, the evidence was sufficient to establish false and fraudulent representations on the part of the defendant and the testimony was clearly admissible.

We have thoroughly reviewed the record and find no error requiring a reversal.

The judgment of the trial court is affirmed.