IRWIN BERMAN *v.* STATE OF MARYLAND

[No. 217, September Term, 1976.]

*Decided March 10, 1977.*

The cause was argued before MORTON, MENCHINE and MASON, JJ.

*Courtland K. Townsend, Jr.,* with whom was *John Burgess Walsh, Jr.,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Louis S. Lear, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

The appellant, Irwin Berman, was convicted by a jury in the Circuit Court for Montgomery County of false pretenses (three counts). He was sentenced to three concurrent nine-month terms in the Montgomery County Detention Center with three months of each sentence suspended upon making restitution.

In seeking a reversal of the judgments below, the appellant's principal assignment of error is that the evidence was insufficient to support his convictions.

On January 1, 1973, Berman formed a corporation known as the Greatway Travel Ltd. of which he was president. The purpose of the company was to sell travel consultant franchises to individuals for a fee and to supply the consultants with training, publications and other materials necessary for them to sell all types of travel on behalf of

Greatway. The consultants were required to execute a contract which specified in detail the services, materials and benefits they would receive.

Initially Berman owned 90% of the stock of Greatway, but after transfers to other investors, his stock ownership diminished to 38%. As a result of mismanagement, credit problems and the failure of certain investors to honor their monetary commitments, the financial condition of the company deteriorated, and as of December 30, 1973, Greatway had a net worth of zero. Notwithstanding its financial problems, the company continued its operations until May of 1974.

In February and March of 1974, the complaining witnesses in this case, Charles Hull, Sylvia Weaver, and Koo Yuen, purchased travel consultant franchises from Greatway for a fee, but did not receive the services or benefits promised.

As to the sufficiency of the evidence, Charles Hull testified that on February 14, 1974, as a result of answering a Greatway advertisement in the Washington Post, he was visited by Orville Kenneth Wright, a Greatway salesman.[1] Wright informed him he would make money as a consultant for Greatway and would receive, among other things, reduced airfares, a percentage of airfare commissions, lower hotel rates, and familiarization tours. He was further informed that he would receive materials, publications and training to aid him in becoming an effective travel consultant. As a result of these representations, he signed the travel consultant agreement and paid Wright $295.00 with the balance to be paid in four monthly payments of $100.00 each.

Sylvia Weaver also signed a travel consultant agreement in February of 1974 and paid Wright $695.00. Representations similar to those made to Hull were also made to Weaver before she signed the contract.

Another complaining witness, Koo Yuen, signed a travel

---

1. The issue of the appellant's criminal responsibility for misrepresentations made by an agent of the corporation was not raised on appeal.

196

consultant agreement in March of 1974 and paid $895.00. His testimony regarding the representations is as follows:

> Everything they said is strictly in the contract. The contract, the copy they have, they let me read over and the details. At the time I read it, it was very reasonable and sounding and the promises they make is strictly a business deal where I pay a sum and get the benefits from the contract.

The travel consultant agreement which the complaining witnesses admit was explained to them, item by item, before they signed provides in pertinent part:

1. GREATWAY agrees to provide for the CONSULTANT:

    a. A complete travel agency service facility for booking all types of travel and related services.

    b. A training program to consist of:

        1. A comprehensive guide for travel consultants and other related miscellaneous sales aids, manuals and materials.

        2. An initial two (2) day training program in CONSULTANT'S geographical area, which CONSULTANT agrees to attend.

        3. A complete, continuous training program whereby GREATWAY TRAVEL will hold monthly seminars, and/or periodic meetings in CONSULTANT'S geographical area for a twelve month period.

        4. Access to travel information during business hours, including toll free, or collect, telephone communications, and reasonable consultation services.

        5. Subscription to Travel Weekly and other trade publications.

        6. Up to 5,000 Direct Mail "Business Getters".

7. Subscription to monthly O.A.G. (Official Airline Guide).

8. Subscription to Quarterly Master & Travel Index.

c. Leads and inquiries in the [a particular geographical area].

d. Commissions on all travel sold by CONSULTANT without restriction as to the area, equal to 50% of the standard travel agency commission, including commissions from IATA and ATC carriers. All commissions shall be payable during the calendar month following the month in which GREATWAY receives its commission on travel sold by CONSULTANT.

e. One trip to Majorca (per attached brochure) at GREATWAY'S expense, available ninety (90) days after initial training program is completed.

The elements of the crime of false pretenses were enumerated by this Court in *Polisher v. State,* 11 Md. App. 555, 560, 276 A. 2d 102, 104 (1971).

[T]he crime is committed when a person:

1) by making a false representation of a past or existing fact;

2) with intent to defraud; and

3) knowledge of its falsity;

4) obtains any chattel, money or valuable security from another;

5) who relies on the false representation;

6) to his detriment.

Of like import, *see Smith v. State,* 237 Md. 573, 207 A. 2d 493 (1965); *Andresen v. State,* 24 Md. App. 128, 331 A. 2d 78, *cert. denied,* 274 Md. 725, *aff'd* 427 U. S. 463, 49 L.Ed. 2d 627 (1976).

The statute under which the appellant was convicted, Article 27, § 140 of the Annotated Code of Maryland, in part provides:

> Any person who shall by any false pretense obtain from any other person any chattel, money or valuable security, with intent to defraud any person of the same, shall be guilty of a misdemeanor, ... *that a mere promise for future payment, though not intended to be performed, shall not be sufficient to authorize a conviction under this section.* (Emphasis supplied).

Our review of the testimony of the complainants and the contents of the travel consultant agreement signed by them, clearly indicates that the representations of Greatway were not representations of a past or existing fact, but rather promises of future acts, which, standing alone, do not violate the statute.

The State, in its attempt to bring Greatway within the ambit of the statute, argues that Greatway's representations to the complainants and those incorporated in the travel agreement implied that Greatway was a viable and bona fide travel agency with the capacity and ability to perform as promised. That inasmuch as these promises were false, Greatway implicitly misrepresented an existing fact, i.e., its institutional status as a travel agency capable of performing the services its salesmen promised and contracted to provide.

As authority for its argument, the State relies solely on 2 Wharton's *Criminal Law and Procedure* § 589 (Anderson ed. 1957) which states:

> The false representation must be as to a material fact or event, existing or past. A statement as to a future event or a promise to produce a future result is not a criminal representation *unless there is implicit therein a statement of the defendant's ability or capacity to achieve that result,*[6] .... (Emphasis supplied) (Footnotes omitted).

Footnote 6 of § 589 refers to *id.* § 593 which in relevant part reads:

> Any false representation as to the skill or qualifications of the defendant is within the statute. Accordingly it is a false pretense to represent falsely that one is a practicing physician, or a clergyman.

Significantly this section cites as an example *Jules v. State*, 85 Md. 305, 36 A. 2d 1027 (1897), where the Court of Appeals held that the defendant's representation that he was a physician, which he was not, and that he had extraordinary and supernatural powers to cure, which he had not, were misrepresentations of present facts and would support a conviction of false pretenses. *Jules* is representative of the cases cited in § 593, *supra*, in that they all involve false representations of present facts as to qualification, position or powers. Consonant with this view is *Davis v. State*, 229 Md. 139, 182 A. 2d 49 (1962) where the Court of Appeals held that it was false pretenses for a defendant to state that he was a minister and represented an organization which collected money and sold advertisements for a church directory, when in fact, he was not a minister and there was no such organization. Unlike the present case, it is obvious the misrepresentations in *Jules* and *Davis*, *supra*, were of existing facts as opposed to promises of future acts.

The State cites several cases which do nothing to buttress its theory of the case. Illustrative of these cases is *State v. Handke*, 340 P. 2d 877 (Kan. 1959), which involved a defendant who promised to construct a certain building. The defendant indicated that he had construction crews, other construction business, and was presently engaged on a particular construction job. The evidence showed that at the time of the promise the defendant did not have a construction business nor any employees. The *Handke* Court stated, among other things, "It is a false pretense where a man represents himself to be in a situation or business which he is not." The State, in its brief, rhetorically asks,

"What difference is there between *Handke* and the characterization of a business as a travel agency capable of doing certain business which it is not qualified to perform?"

The conclusive answer to the State's query is that Greatway, unlike *Handke*, was a legitimate travel agency. It was incorporated in the State of Pennsylvania with its main office in New York City and franchise offices in other areas. The corporation had a board of directors and an experienced staff to manage the various departments which included training, sales, operations, and bookkeeping. It had a five year lease on 3,500 square feet of space in a modern office building, with nine private offices and a library containing all travel programs then in existence. Although Greatway was an unappointed travel agency, i.e., without authority to sell airline tickets, it had a contract with another agency from which airline tickets could be purchased. It is manifest that Greatway, for all intents and purposes, functioned as an authentic travel agency. The fact that mismanagement, credit problems and a weakened financial condition precluded it from delivering on some of its promises did not, *ipso facto*, make it a bogus travel agency. It is clear that *Handke* and the case *sub judice* are markedly different. Similarly the cases of *People v. Kirkup*, 149 N.E.2d 866 (1958); *People v. Sloane*, 4 N.Y. Supp. 2d 784 (1938) and *Davis v. State*, 18 Md. App. 378, 306 A. 2d 620 (1973), relied on by the State, are completely inapposite.

The narrow issue in this case is whether Greatway made false representations to the complainants as to past or existing facts. The statute provides ". . . that a mere promise for future payment though not intended to be performed shall not be sufficient to authorize a conviction. . . ." Article 27, § 140, *supra*.

The State urges us to authorize a lesser degree of culpability for the crime of false pretenses than that prescribed by the statute. For example, the State would have us hold that Greatway's promises of future acts, irrespective of its intent to perform, or without any false statement of past or existing facts, would constitute false pretenses simply because the promises, in and of themselves, implied

that Greatway had the capacity and ability to perform. If we accept the State's argument, all promises of future acts, if not performed, would amount to false pretenses. This is so because promises of future acts necessarily imply an ability or capacity to perform. If this were not true, no potential victim would part with his money.

The Maryland law is clear that there must be a false representation of a past or existing fact to constitute false pretenses. Whether there is implied in the false representation an ability or capacity to perform *vel non* is not the test. It is evident the State's interpretation of the law of false pretenses would not only extend the meaning of § 589, *supra*, upon which the State solely relies, but it would also improperly expand the perimeters of the statute.

The State further contends that Greatway made false representations as to its financial status. Our review of the evidence fails to find any support for this contention.

Charles Hull testified:

> Mr. Wright stated Greatway Travel was an on-going concern. They had been successful in other areas of the country and they were just beginning to open up their office and expand their business into the Washington area. They hoped the Washington area would be as successful as the company had been in the rest of the country.

This statement, standing alone, is an insufficient basis to establish that Greatway misrepresented its past or existing financial condition. This is especially true when the record fails to disclose whether the statement was made prior or subsequent to the signing of the contract or the payment of money.

Sylvia Weaver also testified, "I was told there were 60 million dollars behind Greatway." The record reveals that the person who made this statement was never identified and that it was apparently made during a two-day training seminar subsequent to the signing of the travel agreement. Under these circumstances, the statement was obviously not the inducing cause for Weaver to part with her money.

In view of our holding that the evidence was insufficient to establish that the appellant falsely represented a past or existing fact as contemplated by the statute, it is unnecessary to consider the other issues raised by the appellant.

*Judgments reversed.*
*Costs to be paid by Montgomery County.*